**Gilberto Arabula MARTINEZ,
Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 01–97–00139–CR, 01–97–00140–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Sept. 14, 2000.

Rayford L. Carter, Houston, Edgar Demian Lieck, Beaumont, for Appellant.

Daniel P. Bradley, Michael R. Little, Anahuac, for State.

Panel consists of Justices HEDGES, NUCHIA, and EVANS.*

## OPINION

ADELE HEDGES, Justice.

A jury found appellant guilty of possession of marihuana in an amount of fifty pounds or less, but more than five pounds (cause number 9729), and possession with intent to deliver cocaine in an amount of four grams or more, but less than two hundred grams (cause number 9730). The trial court sentenced appellant to ten years in prison and sixteen years in prison to run concurrently. Appellant contends: (1) the trial court erred in denying his motion to suppress evidence obtained as a result of an illegal stop; (2) the trial court erred in denying his motion to suppress evidence obtained as a result of an illegal detention; (3) the trial court erred in denying his motion to suppress evidence obtained as a result of an illegal search; and (4) the trial court erred in denying his motion to suppress evidence obtained as a result of a search that exceeded the permitted scope. We affirm.

### Facts and Procedural History

Trooper Jeoffry Williams was driving home after finishing his shift when he saw the driver of the van in front of him drift partially onto the shoulder of the freeway with his right tires for one or two seconds and then pull back into his lane of traffic. Upon seeing this swerve, Trooper Williams immediately pulled the van over. Appellant denied having anything to drink and asserted that a problem with the steering wheel caused him to drift out of his lane.

* The Honorable Frank G. Evans, retired Chief Justice, First District Court of Appeals, at Houston, participating by assignment.

Appellant consented to a search of the van. During the search, Trooper Williams examined the underside of the van. He saw that the gas tank had been freshly painted and was noticeably cleaner than the underside of the van. He also saw that the tube leading into the tank was not securely fastened. When Trooper Williams tapped on the bottom of the tank with his baton, he heard a solid thud, instead of a hollow ring.

Trooper Williams then asked appellant to drive the van to a wrecker shop in Anahuac for further inspection of the tank. Although appellant was initially hesitant, he consented. When the gas tank was lowered, numerous bricks of marijuana and a packet of cocaine were found in vacuum sealed bags in the tank.

### Standard of Review

■ The issue in this case is whether Trooper Williams was justified in initially stopping appellant. In a suppression hearing, the trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *State v. Ballard*, 987 S.W.2d 889, 891 (Tex.Crim.App.1999). We afford almost total deference to a trial judge's determination of historical facts that the record supports, especially when the findings are based on an evaluation of credibility and demeanor. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997). We review *de novo* a trial judge's determination of mixed questions of law and fact that do not turn on an evaluation of credibility. *Id.* On a question of the application of law to facts, we review the evidence in the light most favorable to the trial judge's ruling. *Id.*

### Discussion

■ In the first point of error, appellant contends that the trial court erred in denying his motion to suppress evidence obtained as a result of an unjustified stop. He argues that the stop was not justified because Trooper Williams did not have a reasonable suspicion that appellant was driving while intoxicated, that he committed a traffic offense, or that he was ill or in distress. We disagree.

■ A routine traffic stop closely resembles an investigative detention. *Berkemer v. McCarty*, 468 U.S. 420, 439, 104 S.Ct. 3138, 3149–50, 82 L.Ed.2d 317 (1984). Law enforcement officers may stop and briefly detain a person for investigative purposes on less information than would be required to support a probable cause determination. *Terry v. Ohio*, 392 U.S. 1, 21–22, 88 S.Ct. 1868, 1879–81, 20 L.Ed.2d 889 (1968). To justify the intrusion, the officer must have specific articulable facts, which, in light of his experience and personal knowledge, together with inferences from those facts, would reasonably warrant the intrusion on the freedom of the citizen detained for further investigation. *Terry*, 392 U.S. at 21, 88 S.Ct. at 1880.

Trooper Williams stopped appellant based on a reasonable suspicion that a traffic violation had occurred. The Transportation Code provision pertaining to failure to maintain a single lane of traffic provides:

An operator on a roadway divided into two or more clearly marked lanes for traffic:

(1) shall drive as nearly as practical entirely within a single lane; and

(2) may not move from the lane unless that movement can be made safely.

TEX. TRANSP. CODE ANN. § 545.060 (Vernon 1999).

Trooper Williams testified that he saw appellant swerve onto the shoulder of the highway. Because Trooper Williams saw appellant fail to maintain a single lane of travel, which he reasonably believed to be a violation of section 545.060 of the Transportation Code, he had the authority to stop and detain appellant for that violation.

Appellant argues that he did not violate section 545.060 because there was no evidence that the swerve onto the shoulder

was unsafe. Trooper Williams testified that the traffic on the highway that night was moderate to heavy. We hold that it was not unreasonable for Trooper Williams to conclude appellant's swerve onto the shoulder of a busy highway in the early hours of the morning was unsafe.

Although the trial court did not specifically address driving on the shoulder, the trial court could have found a violation of this statute to be a proper basis for the stop. Therefore, we conclude the stop was justified, and that the trial court properly denied appellant's motion to suppress.

We overrule point of error one.

■ In the second point of error, appellant contends that the trial court erred by denying his motion to suppress evidence obtained as a result of an illegal detention. We conclude that appellant's detention following the initial traffic stop was a legal extension of the criminal investigation performed by Trooper Williams.

At the beginning of the stop, Trooper Williams asked appellant to step out of the van so that he could determine if appellant was intoxicated. Upon speaking with appellant, Trooper Williams learned that appellant did not know the name of his passenger. Additionally, appellant and his passenger gave conflicting answers as to the purpose for their travel, their final destination, and the length of their trip. Trooper Williams then asked for appellant's driver's license to run a license check. At this point, appellant consented to a search of his van.

Once Trooper Williams stopped the vehicle for a potential traffic violation, he could detain appellant as long as he had specific articulable facts, which, in light of his experience and personal knowledge, together with other inferences from those facts, would reasonably warrant the intrusion on appellant for further investigation. *Davis v. State*, 947 S.W.2d 240, 242 (Tex.Crim. App.1997). Trooper Williams had a reasonable suspicion to temporarily detain appellant based on his discussions with ap-

pellant and his passenger. *Powell*, 5 S.W.3d at 378–79.

We overrule point of error two.

■ In the third point of error, appellant contends that the trial court erred by denying the motion to suppress evidence obtained as a result of a warrantless search without appellant's consent. We conclude appellant freely and voluntarily consented to a search of the van.

Trooper Williams testified that before he received a reply regarding the status of appellant's driver's license, appellant consented to a search of his van. Trooper Williams looked throughout the interior of the van, as well as the engine compartment. Upon inspection of the underside of the van, Trooper Williams noticed that the gas tank was out of place and was cleaner than the rest of the underside of the van. He also noticed the gas tank had recently been painted and that the tube leading to the tank was not properly affixed in its hatch in the side of the van. When Trooper Williams tapped the tank with his baton, it sounded as if it was full of something other than gasoline. Appellant consented to drive the van to a wrecker shop in Anahuac for a closer examination of the gas tank. When the gas tank was lowered, marijuana and cocaine were found.

Appellant contends that he did not consent to a search of the van. Trooper Williams testified that appellant repeatedly consented to the continued search. Appellant voluntarily drove the van to the wrecker shop in Anahuac. The trial court, which was in the best position to determine the credibility of the officer's testimony, chose to believe Trooper Williams. Giving proper deference to the trial court, we hold the trial court did not abuse its discretion in concluding appellant consented to the search of the van.

We overrule point of error three.

■ In the fourth point of error, appellant contends that the trial court erred by

denying his motion to suppress evidence obtained as a result of a search that exceeded the scope of the consent. We conclude, however, the search of appellant's van and its contents was legally conducted within the scope of appellant's consent to search for narcotics.

Trooper Williams testified that appellant consented to a search of his van for guns, knives, or drugs. Additionally, he also testified that appellant specifically consented to a search of the van's gas tank.

▆▆▆▆ The extent of a search is limited to the scope of the consent given, and the scope of the consent is generally defined by its expressed object. *Florida v. Jimeno*, 500 U.S. 248, 251, 111 S.Ct. 1801, 1803–04, 114 L.Ed.2d 297 (1991). The standard for measuring the scope of consent is that of "objective reasonableness." *Jimeno*, 500 U.S. at 251, 111 S Ct. at 1803–04. This is defined as what the typical reasonable person would have understood by the exchange between the officer and the individual. *Id.*

It is clear from Trooper Williams's testimony that appellant consented to a search of the gas tank for drugs. It is objectively reasonable to find that when an officer speaks to a suspect about taking a closer look at a gas tank, and then discusses the search with a mechanic in his presence, the ensuing consent is for the removal and closer inspection of the tank.

We overrule point of error four.

We affirm the judgment of the trial court.

Justice EVANS, dissenting.

FRANK G. EVANS, Justice (Assigned), dissenting.

The majority holds that the stop was justified because Trooper Williams reasonably believed that a traffic violation was in progress. I would hold that the State failed to present specific facts to justify a reasonable stop. Accordingly, I respectfully dissent.

In my opinion, this case is very similar to *Hernandez v. State*, 983 S.W.2d 867 (Tex.App.-Austin 1998, pet. ref'd). *Hernandez* involved a motion to suppress evidence gained as a result of a traffic stop. *Id.* at 868. The court considered whether a *single instance* of crossing a lane of traffic, traveling in the same direction, when the movement is not shown to be unsafe or dangerous, gave the officer a reasonable basis for suspecting that the defendant had committed a traffic offense.[1] *Id.* Based on the language of the Transportation Code and the legislative history, the court held a traffic offense for moving out of a marked lane exists only when the conditions are unsafe. *Id.* at 871.

Here, the majority concludes appellant's single drift onto the shoulder constitutes a questionable driving pattern that justifies the investigatory stop. In light of *Hernandez*, I disagree.

In *State v. Tarvin*, 972 S.W.2d 910, 912 (Tex.App.-Waco 1998, pet. ref'd), the court held that a defendant's weave into the next lane did not justify the officer's investigative stop, where the officer did not observe any other traffic infractions. In *Tarvin*, an officer saw defendant's vehicle drift to the right side of a two-lane road causing the vehicle's tires to cross over the solid white line at the right-hand side of the road on two or three occasions. *Id.* at 910–11. The officer then pulled the defendant over. *Id.* at 911. The issue was whether the defendant crossed the white line on the outside of the road, and whether this crossing constituted weaving in violation of a traffic law. *Id.* at 911–12. The court distinguished plain weaving from activities that, when coupled with weaving, justify an investigative stop.[2] *Id.* at 912.

---

1. The *Hernandez* court interpreted section 545.060 to mean that a violation occurs only when a vehicle does not stay within its lane

*and* such movement is not safe or is not made safely. *Hernandez*, 983 S.W.2d at 871.

2. *Held v. State*, 948 S.W.2d 45, 51 (Tex.App.-Houston [14th Dist.] 1997, pet. ref'd) (weav-

The court concluded that although mere weaving in one's own lane of traffic can justify an investigatory stop when that weaving is erratic, unsafe, or tends to indicate intoxication or other criminal activity, nothing in the record indicated that the officer believed any of the above to be the case. *Id.*

Like the defendant in *Tarvin,* appellant never entered another lane of traffic or came near the oncoming traffic lane. Additionally, like in *Tarvin,* Trooper Williams did not see appellant commit any other traffic infractions, or see appellant's van move in an unsafe way. Unlike *Tarvin,* however, appellant only drifted onto the shoulder once, whereas the defendant in *Tarvin* crossed the lane marker two or three times.

In conclusion, I would hold that the State did not prove, under the totality of circumstances, that Trooper Williams had a reasonable belief that appellant had violated the Transportation Code.

ing back and forth across several lanes of traffic); *Taylor v. State,* 916 S.W.2d 680, 681–82 (Tex.App.-Waco, 1996 pet. ref'd) (weaving and speeding); *Fox v. State,* 900 S.W.2d 345, 347 (Tex.App.-Fort Worth 1995, pet. dismissed) (erratic speed changes and weaving).