Opinion issued November 14, 2002

 

 



 



 

In The

Court of Appeals

For The

First District of Texas





 Nos. 01-01-01030-CR

 01-01-01031-CR

 01-01-01032-CR





WILLIAM OLIVER DANIELS, IV, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 180th District Court

Harris County, Texas

Trial Court Cause Nos. 866245, 866246, and 866689






O P I N I O N


 In a joint trial involving three indictments, a jury found appellant, William
Oliver Daniels, IV, guilty of two offenses of burglary of a habitation and one offense
of robbery, and assessed his punishment at 15 years' confinement in each case. 

 In each case, appellant asserts as a point of error that the prosecutor committed
reversible error by his misconduct in purposely placing in the jury's view a file folder
bearing notations about appellant's prior convictions. In one burglary of a habitation
case (number 866245), appellant asserts the trial court erred in denying his motion to
suppress evidence obtained from an illegal traffic stop. In three points of error in the
other burglary of a habitation case (number 866246), appellant challenges the legal
and factual sufficiency of the evidence and the trial court's denial of his request for
a jury instruction not to consider evidence presented in the other jointly prosecuted
offenses. In the robbery case (number 866689), appellant challenges the legal and
factual sufficiency of the evidence to prove his guilt of robbery. We affirm the three
judgments.

Background

 On January 17, 2001, appellant and a female companion were pulled over for
a traffic stop shortly after witness Cheri Rackley telephoned the Harris County
Constable's Office, reported a burglary of a habitation in progress, and described the
suspects and their vehicle. The description was broadcast, and the traffic stop
resulted. Property taken in two home burglaries and one robbery was found in the
back of the vehicle. The facts of each offense will be discussed below.

Burglary of John Shirley's home - Cause Number 866245

 On January 17, 2001, at about 1:30 p.m., John Shirley's home was burglarized. 
A neighbor, Cheri Rackley, was at home at the time and observed a black Suburban
that she had not seen before drive down her street. She watched the Suburban, which
was backed into Shirley's driveway, while a white, heavyset female and a black male
carried property from Shirley's house to the vehicle. Rackley telephoned the
constable and reported a burglary in progress. She described the vehicle as a black
Suburban with a dealer tag; she could not make out the number on the tag. She also
described the occupants and told the constable's office the direction the Suburban
went when it left the subdivision. Shirley arrived home shortly, and Rackley told him
that his house had been burglarized. 

 Deputy Constable Chad Hight arrived at Shirley's house at about 1:39 p.m.,
took a description of the vehicle and the suspects from Rackley, and broadcast it to
other units in the area. Within minutes, Deputy Constable Steven Cupit spotted the
described vehicle, followed it, and observed the driver make a right turn without
giving a turn signal. Along with another deputy, Cupit then made a traffic stop of the
Suburban. At first, the officer saw only a white female driver; however, a passenger,
appellant, rose up in the seat after his driver got out. In plain view in the rear of the
Suburban, the officers saw items that were reported taken in the burglaries. Another
deputy drove witness Rackley and complainant Shirley to the scene where Rackley
identified appellant and his companion as the two persons she saw burglarizing
Shirley's home. Shirley identified some of the items found in the back of the
Suburban as his property. Rackley estimated that the entire incident, from the time
she witnessed the burglary until she identified appellant and his companion at the
arrest scene, took approximately 30 minutes.

Burglary of Judy Jackson's home - Cause Number 866246

 On the same day, January 17, 2001, Judy Jackson's home was burglarized
between 12:30 p.m. and 3:00 p.m. She had left home about 12:30 p.m. and her son
telephoned her about 3:00 p.m. to tell her that her house had been burglarized. 
Jackson went home and called the constable, who came out and made a report. 
Jackson gave him serial numbers and receipts for some of the property taken. The
deputy telephoned the station; Jackson was directed to the Harris County Constable
Precinct Four Office, was taken to the property room, and there identified her
property. Jackson's property was recovered from the back of the Suburban in which
appellant was a passenger.

Robbery of Victoria Lemonds - Cause Number 866689

 At approximately 1:20 p.m. on January 16, 2001, one day earlier, as Victoria
Lemonds left a department store and walked toward her car, she noticed appellant
standing near its front, looking at her. As she reached the driver's side door,
appellant "forcefully" came toward her. Lemonds screamed and held onto her purse
with both hands as appellant struggled with her for it. The purse became caught in
Lemonds' watch and bracelet, causing several lacerations to her wrist. After
appellant took her purse, Lemonds grabbed appellant's jacket lapel in her attempt to
get her purse back. Appellant struck her arms forcefully, pushed her back against her
car, and fled with her purse.

 Lemonds got a good look at appellant as she struggled with him, and observed
that the car he fled in was driven by a heavyset blond female. Lemonds went back
into the department store, called the police, and reported the incident. In addition to
the lacerations to her wrist, Lemonds suffered a very sore shoulder as a result of her
struggle with appellant.

 The following day, January 17, 2001, the contents of Lemonds' stolen purse,
including her wallet, checkbook, driver's license, credit cards and car key, were found
in the back of the Suburban in which appellant was arrested. Lemonds identified
appellant in a photo spread as the person she struggled with and who stole her purse.

Prosecutorial Misconduct

 In one point of error in each case, appellant claims reversible error in that the
prosecutor engaged in misconduct by purposely placing in the jury's view, during the
guilt/innocence stage of trial, a file marked with appellant's prior convictions. 
Outside the jury's presence during the guilt/innocence phase, appellant's counsel told
the trial court that two jurors were looking at the State's folder, which bore notations
about appellant's "prior convictions highlighted out, prison time, other felonies, et
cetera."

 Appellant argues on appeal that during the subsequent exchange, the
prosecutor brazenly boasted, "but it was an old trick that Chuck Rosenthal pulled all
the time." However, the court reporter has supplemented the record and corrected
a typographical error that erroneously attributed the statement to the prosecutor; the
corrected record shows the statement was in fact made by appellant's counsel. 
Additionally, during this short exchange, appellant's counsel commented three times
that he was not accusing the prosecutor of intentionally placing the file for jurors to
see.

 Appellant analogizes this situation to Dexter v. State, 544 S.W.2d 426, 427-28
(Tex. Crim. App. 1976), where the court held that the defendant was prevented from
receiving a fair trial when the prosecutor placed a file cabinet labeled "organized
crime" in full view of the jury. This case is distinguishable. In Dexter, the trial court
had previously ordered the prosecutor not to use certain words, including "organized
crime." Additionally, the defendant in Dexter moved for a mistrial, which was
denied. Here, the prosecutor had a file folder on his table that appellant's attorney
thought was being viewed by two jurors. No evidence indicates that jurors, in fact,
looked at the folder or considered what they saw, if anything, in arriving at their
verdict. Further, appellant's counsel made no objection or motion for mistrial, clearly
indicated that he did not think the prosecutor had done it intentionally, and merely
wanted the folder removed. We conclude that no prosecutorial misconduct occurred
and overrule appellant's point of error regarding prosecutorial misconduct in all three
cases.

Motion to Suppress Evidence

 In one point of error in cause number 866245 (burglary of a habitation -- the
Shirley home), appellant asserts that the trial court erred in denying his motion to
suppress evidence obtained from the Suburban in an illegal traffic stop. He asserts
that the officers did not have sufficient information for reasonable suspicion or
probable cause to stop the vehicle because it did not sufficiently match a witness's
description of the vehicle involved in the burglary.

 Generally, a trial court's ruling on a motion to suppress is reviewed under an
abuse of discretion standard. Oles v. State, 993 S.W.2d 103, 106 (Tex. Crim. App.
1999). However, when the motion presents a question of law based on undisputed
facts, as appellant agrees is the situation here, we review de novo. See id.

 A violation of traffic law provides reasonable suspicion to authorize a police
officer to stop a vehicle and detain its occupants briefly. State v. Cardenas, 36
S.W.3d 243, 246 (Tex. App.--Houston [1st Dist.] 2001, pet. ref'd); Josey v. State,
981 S.W.2d 831, 837 (Tex. App.--Houston [14th Dist.] 1998, pet. ref'd). A driver
commits a traffic violation if he turns his vehicle without signaling his intent to turn. 
Tex. Transp. Code Ann. § 545.104(a) (Vernon 1999). Deputy Cupit testified that
he observed the driver of the black Suburban fail to use her turn signal when she
turned right, and stopped her only after he witnessed her commission of that traffic
offense.

 However, apart from the traffic violation Deputy Cupit observed, officers had
an additional basis for the traffic stop. A routine traffic stop closely resembles an
investigative detention. Martinez v. State, 29 S.W.3d 609, 611 (Tex. App.--Houston
[1st Dist.] 2000, pet. ref'd). Law enforcement officers may stop and briefly detain a
person for investigative purposes on less information than would be required to
support a probable cause determination. Id. (citing Terry v. Ohio, 392 U.S.1, 21-22,
88 S.Ct. 1868, 1879-81 (1968)). To justify the intrusion, the officer must have
specific, articulable facts which, in light of his experience and personal knowledge,
together with inferences from those facts, reasonably warrant the intrusion on the
freedom of the citizen detained for further investigation. Id. (citing Terry, 392 U.S.
at 21, 88 S.Ct. at 1880).

 A police officer who does not personally have probable cause to make a
warrantless arrest may nonetheless rely on information transmitted to him by other
officers. Astran v. State, 799 S.W.2d 761, 764 (Tex. Crim. App. 1990); Willhite v.
State, 937 S.W.2d 604, 606-07 (Tex. App.--Houston [1st Dist.] 1996, pet. ref'd)
(citing Pyles v. State, 755 S.W.2d 98, 109 (Tex. Crim. App. 1988)). . This principle
also applies to allow reasonable suspicion, like probable cause, to be transferred from
one officer to another to effect a valid detention. Willhite, 937 S.W.2d at 607.

 Appellant claims Deputy Cupit lacked reasonable suspicion to detain the
Suburban because he testified that (1) he saw the female driver only (and not the
Suburban's second occupant, a black male), and (2) the Suburban bore metal license
plates (not paper plates). These discrepancies do not render the facts insufficient to
provide reasonable suspicion about a suspect's involvement in a recent and nearby
offense. See Louis v. State, 825 S.W.2d 752, 755 (Tex. App.--Houston [14th Dist.]
1992, pet. ref'd) (stating description of two black males in white Oldsmobile
somewhat matched broadcast description of suspects arrested, three black men in tan
Cadillac, sufficient to give officers reasonable suspicion to stop suspect after recent
and nearby robbery).

 Deputy Hight, who responded to the Shirley burglary report, testified that he
broadcast a description of the vehicle and suspects to all units in the area. Deputy
Cupit testified that, at about 1:30 p.m., he heard the broadcast and noticed a 1990's
model Suburban matching that description pass him, driven by a white female. Cupit
saw the driver make a right turn without using her turn signal. Deputy Beck testified
that he was also in the area; that he heard Cupit's broadcast reporting that he had
spotted the vehicle headed Becks's way; that he, Beck, fell in behind the Suburban
and Cupit as they passed him; and that he assisted Cupit in making the traffic stop. 
Deputy Cupit did not testify to his particular reason for stopping the Suburban.

 Deputies Cupit and Beck stopped the Suburban after hearing information
transmitted by Deputy Hight describing the vehicle and its occupants, whom a
witness had apparently just observed committing a burglary, and the direction the
vehicle was headed when it left complainant Shirley's home. Although the Suburban
was described as having paper tags, a white female driver, and a black male occupant,
the officers could reasonably have inferred that paper tags had been used to cover
metal plates, so as to be quickly removable, and that a passenger could be ducking
down in the seat. Both inferences were reasonable; paper plates were found in the
rear of the suburban, and appellant did rise up from the seat when his driver got out
of the Suburban.

 Thus, the record shows: (1) a lay witness's credible observation of an apparent
burglary of a habitation in progress; (2) the witness's telephonic description to law
enforcement authorities of the event in progress, the vehicle used, the vehicle's
occupants, and their direction of travel upon leaving the crime scene; (3) the police
broadcast of this information within minutes to nearby police patrol vehicles; (4) two
patrol officers in the immediate area seeing and following the described vehicle and
driver; (5) the lead officers observing a traffic violation by the driver as she turned
without signaling; (6) the stop of the vehicle after the traffic violation; and (7) the
officers viewing appellant, the earlier-described suspect, when he rose up from the
vehicle's passenger seat. These events, occurring before the officers viewed the
reportedly stolen goods in plain view in the rear of the stopped vehicle, provided
reasonable suspicion to warrant the traffic stop. We overrule appellant's point of
error that the trial court erred in denying his motion to suppress evidence.

Sufficiency of the Evidence

 In two points of error in cause number 866246, appellant challenges the legal
and factual sufficiency of the evidence to sustain his conviction for burglary because
the State relied on evidence from other offenses. In one point of error in cause
number 866689, appellant asserts the evidence was legally and factually insufficient
to prove that he caused the complainant bodily injury, and thus the State failed to
prove robbery.

 We review legal sufficiency by viewing the evidence in the light most
favorable to the verdict to determine if any rational fact finder could have found the
essential elements of the offense beyond a reasonable doubt. King v. State, 29
S.W.3d 556, 562 (Tex. Crim. App. 2000); Howley v. State, 943 S.W.2d 152, 155
(Tex. App.--Houston [1st Dist.] 1997, no pet.).

 Under the factual sufficiency standard, we ask "whether a neutral review of all
of the evidence, both for and against the finding, demonstrates that the proof of guilt
is so obviously weak as to undermine confidence in the jury's determination, or the
proof of guilt, although adequate if taken alone, is greatly outweighed by contrary
proof." King, 29 S.W.3d at 563. We will reverse the fact finder's determination only
if a manifest injustice has occurred. Id. In conducting this analysis, we may disagree
with the jury's determination, even if probative evidence supports the verdict, but we
must avoid substituting our judgment for that of the fact finder. Id.


Legal and Factual Sufficiency - Burglary of Judy Jackson's home - Cause
Number 866246


 A person commits the offense of burglary if, without the effective consent of
the owner, the person: (1) enters a habitation or a building (or any portion of a
building) not then open to the public, with intent to commit a felony, theft, or an 

assault; . . . or (3) enters a building or habitation and commits or attempts to commit
a felony, theft, or an assault. Tex. Penal Code Ann. § 30.02 (Vernon 1994).

 Evidence that a house has been burglarized, together with a defendants
unexplained possession of some of the property recently stolen from the house, is
sufficient to support a conviction for burglary. Hardage v. State, 552 S.W.2d 837,
839 (Tex. Crim. App. 1977). While unexplained possession of recently stolen
property is a circumstance of guilt, it is not conclusive. Id. To be sufficient, the
circumstances relied upon must not only be consistent with each other and with the
guilt of the accused, but must exclude every other reasonable hypothesis except the
guilt of the accused. Id. The requirement of possession may be satisfied even if the
property is held jointly with another. Robinson v. State, 658 S.W.2d 779, 781 (Tex.
App.--Beaumont 1983, no pet.). 

 It is undisputed that Jackson's house was burglarized on January 17, 2001
between 12:30 pm and 3:00 p.m. Jackson's stolen property was found in the
Suburban in which appellant was a passenger. Therefore, more precisely, Jackson's
home had to have been burglarized between 12:30 p.m. and 1:30 p.m., when appellant
was seen burglarizing Shirley's home. Appellant offered no explanation as to why
Jackson's stolen property was found in the back of the Suburban in which he was a
passenger. A rational jury could have found the essential elements to prove appellant
guilty of committing the burglary of Jackson's home. We find the evidence was both
legally and factually sufficient to support the verdict.

Legal and Factual Sufficiency - Robbery Cause Number 866689

 A person commits the offense of robbery if, in the course of committing theft,
and with intent to obtain or maintain control of the property, he intentionally,
knowingly, or recklessly causes bodily injury to another. Tex. Penal Code Ann. 
§ 29.02(a)(1) (Vernon 1994). "Bodily injury" is defined as "physical pain, illness, or
any impairment of physical condition." Id. § 1.07(8) (Vernon 1994).

 Victoria Lemonds testified that appellant violently struggled with her in taking
her purse. As a result, she sustained lacerations on her wrist. Lemonds testified that
appellant struck her on her arms and pushed her up against her car, causing her to
suffer a sore shoulder. The lacerations and shoulder injury sustained by Lemonds are
sufficient evidence to constitute bodily injury. We find that there was sufficient
evidence, both legally and factually, to allow a jury to find that all of the elements of
robbery had been met.

Request for a Jury Instruction

 In one point of error in cause number 866246, appellant challenges the trial
court's denial of his request for an instruction in the jury charge that it not consider
evidence presented in the other jointly prosecuted offenses. In Hammock v. State, the
court held that the plain language of Texas Rules of Evidence 105(a) seems to place
the relevant timing for a limiting instruction request at the moment the evidence is
admitted. 46 S.W.3d 889, 894 (Tex. Crim. App. 2001). Once evidence is received
without a limiting instruction, it becomes part of the general evidence and may be
used for all purposes. Id. at 892.

 Appellant did not object at the time evidence of other offenses was admitted. 
Therefore, we find that the trial court did not err in denying appellant's request for a
limiting instruction.

Conclusion

 We overrule all of appellant's points of error and affirm the judgments of the
trial court.


 Lee Duggan, Jr.

 Justice

Panel consists of Justices Hedges, Keyes, and Duggan. (1)

Do not publish. Tex. R. App. P. 47.4.
1. The Honorable Lee Duggan, Jr., retired Justice, Court of Appeals, First
District of Texas at Houston, participating by assignment.