COURT OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-04-475-CR

 

 

RICHARD D. TOWNSEND, JR.                                                APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

             FROM THE 211th
DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

                                       I. 
Introduction








A jury convicted Richard D. Townsend, Jr. of
possession of less than one gram of cocaine, and the trial court sentenced him
to two years= confinement and a $5,000
fine.  In two issues, Townsend complains
that the trial court erred by overruling his motion to suppress evidence and
that his trial counsel was ineffective. 
We will affirm.

II.  Factual and Procedural Background








After midnight on September 12, 2003, Officer
Summitt was patrolling in an area of Denton known for criminal activity.  At one point during the evening, Officer
Summitt saw Steven Garrett, a homeless person whom Officer Summitt knew to be a
crack cocaine user, walking in the area. 
He observed Garrett walk quickly up and down a street but then lost
sight of him after he cut across a field. 
Less than one minute later, Officer Summitt saw vehicle headlights come
on in the area where he had lost sight of Garrett.  Officer Summitt identified the headlights as
belonging to a newer model truck that he had observed circling the area earlier
that evening.  Suspecting that Garrett
had delivered drugs to the occupants of the truck, Officer Summitt followed the
truck and stopped it after he observed the driver commit a traffic violation.        Officer Summitt initiated contact with
the driver and Townsend, the passenger. 
While Officer Summitt was talking to the driver, he observed Townsend
reach under his seat.  Officer Summitt
became concerned that Townsend had a weapon under his seat and instructed him
to stop reaching under the seat.  After a
few requests, Townsend complied.  Officer
Summitt also became suspicious that both the driver and Townsend were
intoxicated.  He testified that Townsend
had bloodshot eyes.  Officer Summitt
called for a backup officer to assist him in removing both individuals from the
vehicle and to stay with Townsend while Officer Summitt administered field
sobriety tests to the driver. 

A few minutes later, Officer Epting arrived to
assist Officer Summitt. Officer Summitt instructed the driver and Townsend to
exit the vehicle.  Officer Epting patted
down Townsend for officer safety purposes and instructed him to sit on the
curb.  Officer Summitt received notice
that Townsend had no outstanding warrants for his arrest.  Officer Summitt then searched the vehicle for
contraband and, after finding none, began administering field sobriety tests to
the driver.  At one point, Officer
Summitt asked Officer Epting to escort Townsend to another location on the
curb, and when Townsend stood up to move, Officer Epting saw something fall
from his clothing.  Officer Epting
pointed out the object to Officer Summitt, and Officer Summitt determined that
it contained an illegal substance, cocaine. 
Officer Epting then arrested Townsend.

Townsend moved to suppress the cocaine, but the
trial court denied his motion.  Based on
this evidence, the jury convicted Townsend for possession of cocaine.

 








III.  Motion to Suppress

In his first issue, Townsend argues that the
trial court erred by overruling his motion to suppress because Officer Summitt
illegally arrested him and, thus, did not lawfully seize the cocaine.  Townsend concedes that Officer Summitt=s
initial stop of the vehicle and detention of him were lawful.  Townsend contends, however, that once Officer
Summitt determined that he was no threat to officer safety and had no
outstanding warrants for his arrest, Officer Summitt should have released him
and that his continued detention constituted an unlawful arrest.  The State responds that Townsend was not under
arrest at the time Officer Summitt found the cocaine. 








We review a trial court's ruling on a motion to
suppress evidence under a bifurcated standard of review.  Carmouche v. State, 10 S.W.3d 323, 327
(Tex. Crim. App. 2000).  We do not engage
in our own factual review.  Romero v.
State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); Best v. State,
118 S.W.3d 857, 861 (Tex. App.CFort
Worth 2003, no pet.).  At a suppression
hearing, the trial judge is the sole trier of fact and judge of the credibility
of the witnesses and the weight to be given their testimony.  State v. Ross, 32 S.W.3d 853, 855 (Tex.
Crim. App. 2000).  Therefore, we give
almost total deference to the trial court's rulings on (1) questions of
historical fact and (2) application-of-law-to-fact questions that turn on an
evaluation of credibility and demeanor.  Johnson
v. State, 68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002); Best, 118
S.W.3d at 861-62.  However, we review de
novo a trial court=s rulings on mixed questions of
law and fact if they do not turn on the credibility and demeanor of witnesses. Johnson,
68 S.W.3d at 652-53. When a trial court does not make express findings of
historical facts, as is the case here, the facts are viewed in a light
favorable to the trial court=s
ruling.  See Loserth v. State, 963
S.W.2d 770, 774 (Tex. Crim. App. 1998). 
In determining whether a trial court's decision is supported by the
record, we generally consider only evidence adduced at the suppression hearing
because the ruling was based on it rather than evidence introduced later.  Rachal v. State, 917 S.W.2d 799, 809 (Tex.
Crim. App.), cert. denied, 519 U.S. 1043 (1996).








The law is well-settled that an officer=s
investigative detention of a suspect based on reasonable, articulable facts
that the suspect has committed or is committing an offense does not violate the
Fourth Amendment as long as (1) the officer=s action
was justified at its inception and (2) the officer=s action
was reasonably related in scope to the circumstances which justified the
inference in the first place.  See
Terry v. Ohio, 392 U.S. 1, 19-20, 88 S. Ct. 1868, 1879 (1968); Davis v.
State, 947 S.W.2d 240, 242 (Tex. Crim. App. 1997).  The second prong deals with the scope of the
detention.  Under the second prong, an
investigative detention must be temporary and last no longer than is necessary
to effectuate the purpose of the stop.  Powell
v. State, 5 S.W.3d 369, 376 (Tex. App.CTexarkana
1999, pet. ref=d) (citing Florida v. Royer,
460 U.S. 491, 500, 103 S. Ct. 1319, 1325 (1983)), cert. denied, 529 U.S.
1116 (2000).  Once the reason for the
stop has been satisfied, the stop may not be used as a fishing expedition for
unrelated criminal activity.  Id.   The law is equally well-settled that additional
facts and information discovered by an officer during a lawful detention may
form the basis for a reasonable suspicion that another offense has been or is
being committed.  See Razo v.
State, 577 S.W.2d 709, 711 (Tex. Crim. App. [Panel Op.] 1979); Mohmed v.
State, 977 S.W.2d 624, 628 (Tex. App.CFort
Worth 1998, pet. ref=d).  Articulable facts coming to the officer=s
knowledge during the proper stop or detention may justify further
investigation.  Razo, 577 S.W.2d
at 711; Mohmed, 977 S.W.2d at 628. 
An officer is not required to ignore evidence or information that
legitimately comes to his attention during a valid investigative stop merely
because such evidence or information is not related to the initial purpose of
the stop.  See, e.g.,
Razo, 577 S.W.2d at 711; Mohmed, 977 S.W.2d at 628; see also
Powell, 5 S.W.3d at 378-79;








The
standard for distinguishing between an investigative detention and an arrest,
however, is not always clear because both constitute seizures.  Josey v. State, 981 S.W.2d 831, 839
(Tex. App.CHouston [14th Dist.] 1998, pet. ref'd).  The nature of the detention determines the
constitutional parameters that apply to determine its legality.  Amores v. State, 816 S.W.2d 407, 411
(Tex. Crim. App. 1991).  An investigative
detention, to be constitutionally valid, may be founded upon a reasonable,
articulable suspicion while an arrest, to pass constitutional muster, must be
supported by probable cause.  Id.








An
arrest occurs when a person's liberty of movement is restricted or restrained.  Id. 
The code of criminal procedure provides that a person is arrested when
he has been actually placed under restraint.  Tex. Code Crim. Proc. Ann. art. 15.22
(Vernon 2005).[2]  Factors that Texas courts have considered in
determining whether a suspect is under arrest are whether the officer actually
undertakes an investigation, the accused is handcuffed, the accused is detained
at gunpoint, the number of police far outnumbers the citizens, threatening
language is used, the accused is transported to another location, the accused=s
vehicle is blocked to prevent his departure, and  physical force is used.  Carter v. State, 150 S.W.3d 230, 237
(Tex. App.CTexarkana, 2004, no pet.)
(citing cases that discuss factors). 
Whether a detention is an actual arrest or an investigative detention
depends on the reasonableness of the intrusion under all of the facts.  Rhodes v. State, 945 S.W.2d 115, 118
(Tex. Crim. App.), cert. denied, 522 U.S. 894 (1997).

Here, the record at the suppression hearing and
the videotape of Townsend=s stop shows that Townsend was
never handcuffed before Officer Summitt seized the cocaine.  Neither officer detained Townsend at
gunpoint.  Townsend was not far
outnumbered by police, as only two officers were present during the stop.  Neither the record nor the videotape
indicates that either officer used threatening language.  Neither officer transported Townsend to
another location prior to the seizure of the cocaine.  Neither officer blocked the vehicle in which
Townsend was riding prior to the stop. 
Finally, neither officer used physical force on Townsend.  We cannot say that a reasonable person in
Townsend=s
situation would have felt restrained to the degree associated with a formal
arrest.  Thus, we hold that Townsend was
not under arrest at any time prior to Officer Summitt=s
seizure of the cocaine.  See Carter,
150 S.W.3d at 237.








We next consider whether Townsend was illegally
detained at any point prior to the time Officer Summitt seized the
cocaine.  Because Townsend concedes that
Officer Summitt=s initial stop of the vehicle
was lawful, we consider only whether Officer Summitt=s
actions after determining that Townsend had no weapons and no outstanding
warrants for his arrest were reasonably related in scope to the circumstances
that justified the inference in the first place.  See Terry, 392 U.S. at 19-20, 88 S.
Ct. at 1879.








As Officer Summitt testified, during the course
of his interaction with both Townsend and the driver, he became suspicious that
both were intoxicated.  He was not
required to ignore this evidence of possible intoxication and was entitled to
investigate further.  See Razo,
577 S.W.2d at 711; Mohmed, 977 S.W.2d at 628.  Officer Summitt had a reasonable safety
concern about leaving Townsend unattended while he administered field sobriety
tests to the driver, so he called for backup. 
Our review of the videotape indicates that approximately six minutes
passed between the time Officer Epting conducted the officer safety pat down of
Townsend and the time Officer Summitt seized the cocaine and told Officer
Epting to arrest Townsend.  Because
Officer Summitt was in the process of administering field sobriety tests to the
driver, we conclude that Townsend=s
continued detention for six minutes during this time was necessary to
effectuate the purpose of the investigation. 
Thus, we hold that Townsend=s
continued detention during these six minutes was based on articulable suspicion
and was reasonable and, thus, was not violative of the Fourth Amendment.  See Mohmed, 977 S.W.2d at 628; see
also Simpson v. State, 29 S.W.3d 324, 327, 329 (Tex. App.CHouston
[14th Dist.] 2000, pet. ref'd); Martinez v. State, 29 S.W.3d 609, 612
(Tex. App.CHouston [1st Dist.] 2000, pet.
ref=d); Zervos
v. State, 15 S.W.3d 146, 152-53 (Tex. App.CTexarkana
2000, pet. ref'd); Powell, 5 S.W.3d at 377-78 (all holding that
observations made and facts learned by officer during traffic stop justified
continued detention).  Accordingly, we
overrule Townsend=s first issue.

IV.  Effective Assistance of Counsel








Before trial, Townsend elected to have the jury
assess his punishment. However, subsequent to his making that election,
Townsend=s
counsel met en camera with the court and an assistant district attorney.  Townsend=s
counsel advised the court that he had learned through his research that only
the trial court had the authority to grant Townsend probation.[3]  The trial court told Townsend=s
counsel that it believed that probation and completion of the Substance Abuse
Felony Punishment program, as opposed to a jail sentence, were appropriate for
Townsend.  Townsend=s
counsel then asked the court if it was aware of Townsend=s prior
convictions, and the court confirmed that it was.[4]  The State advised the trial court that it
intended to seek a jail sentence if Townsend were convicted.  Based upon the trial court=s
statement that it did not believe that a jail sentence was appropriate for
Townsend, Townsend=s counsel obtained Townsend=s
permission to have the trial court assess his punishment.  The jury found Townsend guilty, and the court
sentenced Townsend to two years=
confinement and imposed a $5,000 fine. 
Townsend filed a motion for new trial alleging that his trial counsel
was ineffective, and the trial court denied his motion. 

In his second issue, Townsend argues that his
counsel was ineffective because he advised Townsend to change his punishment
election in order to allow the trial court to assess his punishment.  The State maintains, however, that Townsend=s
counsel was not ineffective because counsel=s advice
to Townsend was based on sound trial strategy. 









To establish ineffective assistance of counsel,
appellant must show by a preponderance of the evidence that his counsel=s
representation fell below the standard of prevailing professional norms and
that there is a reasonable probability that, but for counsel=s
deficiency, the result of the trial would have been different.  Strickland v. Washington, 466 U.S.
668, 687, 104 S. Ct. 2052, 2064 (1984); Salinas v. State, 163 S.W.3d
734, 740 (Tex. Crim. App. 2005); Mallett v. State, 65 S.W.3d 59, 62-63
(Tex. Crim. App. 2001); Thompson v. State, 9 S.W.3d 808, 812
(Tex. Crim. App. 1999); Hernandez v. State, 988 S.W.2d 770, 770 (Tex.
Crim. App. 1999).








In evaluating the effectiveness of counsel under
the first prong, we look to the totality of the representation and the
particular circumstances of each case.  Thompson,
9 S.W.3d at 813.  The issue is whether
counsel=s
assistance was reasonable under all the circumstances and prevailing
professional norms at the time of the alleged error.  See Strickland, 466 U.S. at 688-89,
104 S. Ct. at 2065.  Review of counsel=s
representation is highly deferential, and the reviewing court indulges a strong
presumption that counsel=s conduct fell within a wide
range of reasonable representation.  Salinas,
163 S.W.3d at 740; Mallett, 65 S.W.3d at 63.  A reviewing court will rarely be in a
position on direct appeal to fairly evaluate the merits of an ineffective
assistance claim.  Thompson, 9
S.W.3d at 813-14.  AIn the
majority of cases, the record on direct appeal is undeveloped and cannot
adequately reflect the motives behind trial counsel=s
actions.@  Salinas, 163 S.W.3d at 740 (quoting Mallett,
65 S.W.3d at 63).  To overcome the
presumption of reasonable professional assistance, Aany
allegation of ineffectiveness must be firmly founded in the record, and the
record must affirmatively demonstrate the alleged ineffectiveness.  Salinas, 163 S.W.3d at 740 (quoting Thompson,
9 S.W.3d at 813).  A record affirmatively
demonstrating the alleged ineffectiveness may, however, be provided by a motion
for new trial hearing.  See Jones
v. State, 133 S.W.3d 307, 312 (Tex. App.CFort
Worth 2004, no pet.).

The second prong of Strickland requires a
showing that counsel's errors were so serious that they deprived the defendant
of a fair trial, i.e., a trial whose result is reliable.  Strickland, 466 U.S. at 687, 104 S.
Ct. at 2064. In other words, appellant must show there is a reasonable
probability that, but for counsel=s
unprofessional errors, the result of the proceeding would have been
different.  Id. at 694, 104 S. Ct.
at 2068.  A reasonable probability is a
probability sufficient to undermine confidence in the outcome.  Id. 
The ultimate focus of our inquiry must be on the fundamental fairness of
the proceeding whose result is being challenged.  Id. at 697, 104 S. Ct. at 2070.








Here, both Townsend and the State agree that the
trial court stated a preference for community supervision and drug treatment
for Townsend, as opposed to a jail sentence. 
Both also agree that Townsend would have to receive some sentence of
incarceration, regardless of whether the jury or the trial court assessed the
punishment, but that only the trial court had the authority to grant community
supervision.  Townsend argues that,
regardless of the trial court=s
clarity in stating its belief that a jail sentence would be inappropriate,
Townsend=s
counsel was ineffective for believing that the trial court=s
statements were Aenforceable [as] a plea bargain.@  He also contends that his counsel was
ineffective because he received the harshest possible sentence from the trial
court.  Under these facts, we must
consider whether Townsend=s counsel=s advice
to allow the trial court to assess his punishment was within the range of
reasonable representation.  See
Salinas, 163 S.W.3d at 740.








In this case, both Townsend=s trial
counsel and the State understood the trial court=s
statements to indicate that it would most likely grant Townsend community
supervision.  Regardless of Townsend=s
counsel=s belief
about the enforceability of the trial court=s
preference for community supervision, we cannot say that Townsend=s
counsel was unreasonable for believing that Townsend stood a better chance of
receiving community supervision if the trial court assessed his
punishment.  We also cannot conclude that
Townsend=s
counsel=s advice
was unreasonable in light of the fact that the trial court could grant
probation even if the jury assessed punishment. 
The decision of who assesses punishment is usually a matter of trial
strategy.  See Ex parte Adams, 701
S.W.2d 257, 259 (Tex. Crim. App. 1985). 
In light of the trial court=s
statement that it believed community supervision would be appropriate for
Townsend, we cannot conclude that Townsend=s trial
counsel=s advice
was not based on sound trial strategy. 
We hold that Townsend=s
counsel=s advice
was within the range of reasonable representation.[5]  Thus, we hold that the trial court did not
abuse its discretion by overruling Townsend=s motion
for new trial.  Accordingly, we overrule
Townsend=s second
issue.

V.  Conclusion

Having overruled each of Townsend=s two
issues, we affirm the trial court=s
judgment.

 

 

 

SUE
WALKER

JUSTICE

 

PANEL B:   CAYCE,
C.J.; DAUPHINOT and WALKER, JJ.

 

DO NOT PUBLISH

Tex.
R. App. P.
47.2(b)

 

DELIVERED: March 9, 2006











[1]See Tex. R. App. P.
47.4.





[2]This provision has
been called Alegislatively
obsolete@ because it was
drafted prior to the United States Supreme Court's decision in Terry,
392 U.S. at 19-20, 88 S. Ct. at 1879, and fails to distinguish between
temporary investigative detentions and arrests.  See Zayas v. State, 972 S.W.2d 779, 789
(Tex. App.CCorpus Christi
1998, pet. ref'd).





[3]At the hearing on Townsend=s motion
for new trial, Townsend=s trial counsel testified that he understood that the
court could grant probation, even if the jury assessed punishment.  





[4]At the hearing on Townsend=s motion
for new trial, Townsend=s trial counsel testified that the court was aware of
Townsend=s prior convictions but not the underlying facts
surrounding the convictions.  Townsend=s trial
counsel also testified that the court was unaware of the fact that Townsend had
already been through the SAFP program. 





[5]Having held that Townsend=s trial
counsel=s representation was reasonable under the
circumstances and prevailing norms, we need not address the second prong of Strickland.  See Strickland, 466 U.S. at 687, 104
S. Ct.  at 2064; Salinas, 163
S.W.3d at 740; Mallett, 65 S.W.3d at 62-63; Thompson, 9 S.W.3d at
812; Hernandez, 988 S.W.2d at 770.