**Opinion filed June 26, 2014**



In The

# Eleventh Court of Appeals

_____

## No. 11-13-00150-CR
_____

## THE STATE OF TEXAS, Appellant

## V.

## HENRY HARDIN JOHNSON, Appellee

**On Appeal from the 42nd District Court**

**Taylor County, Texas**

**Trial Court Cause No. CR-25,100-A**

## M E M O R A N D U M   O P I N I O N

The State of Texas appeals from the trial court's order in which it granted Henry Hardin Johnson's motion to suppress evidence obtained as a result of a warrantless traffic stop. The State alleges that the traffic stop was justified on two separate grounds. Under the relevant standard of review, we find no abuse of discretion and affirm the trial court's ruling.

At the hearing on the motion to suppress, Texas Department of Public Safety Trooper Tommy Dan Hill testified that, on the date of the offense, he and Texas Department of Public Safety Sergeant Bryan Sheridan were traveling in the right-hand lane of southbound traffic on Highway 83 (Winter's Freeway). The southbound lanes are separated from the northbound lanes by a concrete barrier. Trooper Hill said that he "looked up in the rearview mirror" and saw a vehicle traveling neither in the left or right lanes but, rather, in the center of the roadway. The trooper testified that he "moved [his] vehicle over because [he] didn't know what lane it was traveling in. So, I moved over into this lane, the actual off-ramp lane, to let it pass." As the patrol vehicle moved into the exit lane, the other vehicle passed the troopers, but once it had passed, the troopers returned to the right-hand lane and began following behind it. When the other vehicle moved into the left-hand lane to pass another vehicle, the troopers observed the left tires "go across the left shoulder line." The troopers conducted a traffic stop for failure to drive in a single lane, and as a result of the stop, Johnson, the driver of the vehicle, was ultimately arrested for driving while intoxicated. At the conclusion of the dash-cam video that was played during the hearing, it became apparent that Sergeant Sheridan was in fact the driver of the patrol car, not Trooper Hill.

Earlier, during an administrative driver's license revocation hearing, Trooper Hill testified about two maneuvers. The first maneuver was when Johnson passed the patrol vehicle; Trooper Hill said that there was nothing unsafe about that maneuver and that it was the second maneuver that was unsafe. At the hearing on Johnson's motion to suppress, however, Trooper Hill told the court that he "looked up in the rearview mirror and it appeared a vehicle was traveling in the center of the roadway" and that he moved into the exit lane "because I felt that it was unsafe the way he was coming from behind me." Trooper Hill told the trial court that he did not include the first maneuver in his report, tell the prosecutor about it, or

2

testify in the administrative hearing that the first maneuver was unsafe because "it just went by [his] mind." Trooper Hill claimed that he was not changing his testimony and was now testifying about the first maneuver because he "watched the video multiple times after [the administrative hearing]" and "thought a lot about it." He said that he did not include the first maneuver in his report because it could not be seen on the video. Trooper Hill testified that "the reason I moved over is because I felt that it was unsafe"; however, Sergeant Sheridan was driving, not Trooper Hill. When asked how he could see Johnson approaching in his rearview mirror if he was not driving, Trooper Hill admitted that he did not see Johnson approaching in his rearview mirror but, rather, through the passenger side-view mirror.

Trooper Hill testified that he stopped Johnson based on the second maneuver, which occurred after Johnson had driven past the troopers and when he was passing another vehicle. Trooper Hill testified at both hearings that Johnson was not close to the vehicle when he passed it and was not close to that vehicle when he returned to the right-hand lane after passing. Trooper Hill agreed in both hearings that this "was not a dangerous maneuver," but at the suppression hearing, he told the court that everything about the second maneuver was safe, "[o]ther than driving on that left yellow line." Trooper Hill explained that Johnson was a danger to himself because driving close to a concrete barricade could have caused him to lose control and leave the roadway. Although Johnson crossed the line and passed the other vehicle without causing an accident, Trooper Hill insisted that "it's not safe to drive out of your lane close to those." Johnson's trial counsel insisted at the suppression hearing that Johnson did not violate Section 545.060(a)[1] because he passed the other car safely; the trial court did not believe that the issue of safety was relevant under the statute.

---

[1] TEX. TRANSP. CODE ANN. § 545.060(a) (West 2011).

At the close of the hearing, the trial court denied the motion to suppress. Johnson's trial counsel filed a motion to reconsider, and both Johnson and the State submitted letter briefs. After reviewing the case law and arguments, the trial court agreed with Johnson that, to justify the traffic stop, the State had to offer evidence showing both that Johnson failed to maintain a single lane and that his driving was unsafe. The trial court concluded that there was no evidence that Johnson's passing and "barely touching the white line was unsafe" and granted the motion to suppress.

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We do not engage in our own factual review because the trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007). So we afford almost total deference to the trial court's rulings on questions of historical fact and mixed questions of law and fact that turn on an evaluation of credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006). We review de novo pure questions of law and mixed questions of law and fact that do not depend on credibility determinations. *Martinez v. State*, 348 S.W.3d 919, 922–23 (Tex. Crim. App. 2011).

When we review a trial court's ruling on a motion to suppress, we view the evidence in the light most favorable to the trial court's ruling. *Wiede*, 214 S.W.3d at 24; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When, as here, the trial court makes explicit findings of fact, we afford those findings almost total deference as long as the record supports them. We will uphold the trial court's ruling "if it is reasonably supported by the record and correct under any theory of law applicable to the case." *Amador v. State*, 275 S.W.3d 872, 879 (Tex. Crim.

App. 2009) (quoting *Ramos v. State*, 245 S.W.3d 410, 417–18 (Tex. Crim. App. 2008)).

The State argues that the trial court erred when it granted Johnson's motion to suppress because the traffic stop was justified on two separate grounds. The State first contends that the troopers observed Johnson violate Section 545.060 of the Transportation Code.

A police officer may briefly detain a person to investigate possible criminal behavior even if there is no probable cause to make an arrest. *Terry v. Ohio*, 392 U.S. 1, 22 (1968). An investigative detention is justified if the officer has reasonable suspicion to believe that the person is violating the law. *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). An officer has reasonable suspicion if he has specific, articulable facts that, when combined with their rational inferences, would lead the officer to reasonably conclude that a person is, has been, or soon will be engaged in criminal activity. *Id.* Courts determine reasonable suspicion under the totality of the circumstances. *Id.*

When a traffic violation is committed in the presence of an officer, however, the officer has probable cause to lawfully stop and detain or arrest the driver. *See* TEX. TRANSP. CODE ANN. § 543.001 (West 2011). The provision at issue here requires that an operator on a roadway divided into two or more clearly marked lanes for traffic shall drive as nearly as practical entirely within a single lane and may not move from the lane unless that movement can be made safely. *Id.* § 545.060(a) (West 2011). Courts that have construed this provision have found that "a violation of Section 545.060(a) occurs only when a vehicle fails to stay within its lane and that movement is not safe or is not made safely." *Bass v. State*, 64 S.W.3d 646, 650 (Tex. App.—Texarkana 2001, pet. ref'd).

In cases where the stop was justified because of a violation of this section, there was evidence of heavy traffic, erratic driving, or crossing into oncoming

5

traffic. *See, e.g.*, *Tyler v. State*, 161 S.W.3d 745, 748–49 (Tex. App.—Fort Worth 2005, no pet.) (holding stop justified based on observance of erratic driving and weaving in heavy holiday traffic); *Cook v. State*, 63 S.W.3d 924, 926–27 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd) (holding stop justified based on speeding out of parking lot, driving "all over" unmarked roads, and "constantly" crossing into other lane); *Martinez v. State*, 29 S.W.3d 609, 610, 612 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd) (holding stop justified when car drifted onto shoulder of freeway during busy traffic); *Tex. Dep't of Pub. Safety v. Bell*, 11 S.W.3d 282, 282–83 (Tex. App.—San Antonio 1999, no pet.) (holding stop justified when car crossed onto shoulder of lane of oncoming traffic).

But if the evidence before the trial court merely showed that the vehicle slowly drifted or merely crossed into another same-direction lane of traffic when there were few cars on the road, the evidence is insufficient to justify a stop because it does not establish that the driver's failure to drive in a single lane was unsafe or dangerous. *See Hernandez v. State*, 983 S.W.2d 867 (Tex. App.—Austin 1998, pet. ref'd). In *Hernandez*, the arresting officer testified that he conducted a traffic stop around 1:30 a.m. after the defendant "broke the plane dividing the two lanes" before drifting back into the right-hand lane. *Id.* at 868–69. According to the officer, the defendant had not drifted into oncoming traffic, and there were "[v]ery few [vehicles around] at that time in the morning." *Id.* at 868. When asked whether there was anything "unsafe or improper about that lane movement," the officer testified that the only danger was "failing to maintain a single-marked lane." *Id.* The court held that a person commits an offense under this section if he "mov[es] out of a marked lane when it is not safe to do so" and concluded that the officer's testimony failed to establish that it was unsafe. *Id.* at 871–72; *see also Fowler v. State*, 266 S.W.3d 498, 503–04 (Tex. App.—Fort Worth 2008, pet. ref'd)

(referencing case examples of sufficient and insufficient evidence to establish a violation of Section 545.060(a)).

Here, the trial court found that the officer did not "state reasonable, articulable facts explaining how touching the line on the improved shoulder was unsafe." Trooper Hill testified that he saw the tires on Johnson's vehicle "go across the left shoulder line, the left yellow line of traffic." Johnson's vehicle was not close to the other vehicle while passing, nor did it come close to the vehicle after passing when he returned to the right-hand lane. According to Trooper Hill, "[I]t's not safe to drive out of your lane close to [concrete barricades]." When pressed to explain how Johnson was unsafe, Trooper Hill said that, "if he would have stayed in that lane and not went over the left shoulder line, I wouldn't have had cause to stop him."

We cannot conclude that Johnson's failure to drive in a single lane of traffic was unsafe. The undisputed evidence shows that traffic was very light, that Johnson did not cross into oncoming traffic, and that he was not driving erratically. Thus, even in the absence of the dash-cam video—which we cannot consider because it was not admitted into evidence as an exhibit—the record supports the trial court's conclusion that Trooper Hill did not sufficiently explain how Johnson's driving was unsafe. *See State v. Tarvin*, 972 S.W.2d 910, 912 (Tex. App.—Waco 1998, pet. ref'd) (concluding that merely touching the line without evidence of crossing into another lane, speeding, or erratic driving does not constitute "weaving out of [the] lane").

The State argues that it does not matter that Appellant crossed the line safely because weaving out of the lane is dangerous even when there are no other cars on the road. In support of its position, the State cites *Mothershed v. State*, No. 05-11-00325-CR, 2012 WL 3104370 (Tex. App.—Dallas July 11, 2012, no pet.) (mem. op., not designated for publication). There the officer observed the defendant

swerve and almost hit a concrete barrier and then "jerk back to the left and cross the other solid lane divider." *Id.* at *1. To make sure that this was not an isolated incident, the officer followed the car and observed five traffic violations, including swerving and hitting the lane dividers several more times, before finally conducting a traffic stop. *Id.* The defendant's driving was so erratic that, if the defendant continued to operate a vehicle, "he would be putting himself or others in danger." *Id.* The appellate court concluded that, "[a]lthough no other vehicles were in the vicinity, [the officer] had reasonable suspicion based on [the defendant's] driving behavior that he was unable to safely operate a vehicle." *Id.* at *4. Under the totality of the circumstances, the stop was justified both because of "repeated traffic violations of section 545.060(a)" and because the erratic driving provided reasonable suspicion of intoxication. *Id.*

The facts of this case are distinct because there were no repeated violations, and the record shows that Johnson was driving safely, was not speeding, was not weaving, and merely touched the line once before safely passing another vehicle. Trooper Hill did not describe his driving as erratic and even testified during the administrative hearing that "he passed him safely." The trial court's conclusion that the evidence did not show "an unsafe maneuver when the [Appellant] touched the line" is supported by the record.

The State also contends that the stop was justified based on Trooper Hill's assertion "that he believe[d] [Johnson] may have been intoxicated." The trial court concluded, however, that "there was no other legal basis for the stop." At the hearing, Trooper Hill testified to the following:

> As we were traveling in that right lane, I looked up in the rearview mirror and it appeared a vehicle was traveling in the center of the roadway, not in the right or left lane, so I moved my vehicle over because I didn't know what lane it was traveling in. So I moved over into this lane, the actual off-ramp lane, to let it pass.

8

Trooper Hill then pulled into the lane behind Johnson and began following him. When asked why he began following Johnson, Trooper Hill said, "For the time of night, it could have possibly been somebody that was drowsy or intoxicated, based on that kind of driving." The troopers followed Johnson until they saw his tires cross the line when passing another vehicle.

While Trooper Hill testified that someone could have been "drowsy or intoxicated," he did not testify that he believed Johnson was intoxicated but explained that he began following Johnson because someone *could be* intoxicated or drowsy. The officers did not conduct a traffic stop based on what Trooper Hill observed in his passenger side-view mirror but, instead, continued following Johnson.

We note that Trooper Hill testified that he changed lanes because he saw Johnson approaching him in an unsafe manner, but the record shows that Trooper Hill was the passenger. Trooper Hill could not see Johnson through the rearview mirror because Sergeant Sheridan was driving, and he explained that, instead, he saw Johnson through the passenger side-view mirror. Yet, when telling the court what occurred, Trooper Hill said, "I looked up in the rearview mirror," "I moved my vehicle," and "I . . . began to follow that vehicle." Furthermore, Trooper Hill admitted that he had not included information in the report about the first maneuver being dangerous and had not testified to those facts during the prior hearing because the first maneuver was not on the video; he then said that he was testifying to those facts at the suppression hearing because he had watched the video several times since the earlier hearing.

Viewing the evidence in the light most favorable to the verdict, the trial court could have reasonably rejected this portion of Trooper Hill's testimony and

concluded that "there was no other legal basis for the stop." Thus, the record supports the trial court's conclusion that there was no other basis for the stop.

The State also argues that "the trial court reversed its decision and granted the motion on the application of the law." To the extent the State is arguing that we should review the trial court's ruling de novo rather than deferring to the lower court, we disagree. The Court of Criminal Appeals has explained why we afford almost total deference to the trial court under these circumstances:

> In a motion to suppress hearing where the only evidence presented is the testimony of the arresting officer (which, if believed, adds up to probable cause) and the trial court grants the motion without any explanation, there is not necessarily a "concrete" set of facts that can be implied from such a ruling. The trial court may have disbelieved the officer on at least one material fact, or the trial court may be in a situation in which it does not know what exactly the facts are, but it does know (on the basis of demeanor, appearance, and credibility) that they are not as the witness describes. In this situation, the appellate court does not necessarily have a set of historical facts to which it may apply the law. The determination of probable cause rests entirely on the credibility of the lone witness. This scenario is a mixed question of law and fact, the resolution of which turns on an evaluation of credibility and demeanor. The proper standard of review is therefore . . . "almost total deference" to the trial ruling.

*State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000).

Because the trial court is the sole judge of the credibility of the witnesses and because its ruling turned on its evaluation of their credibility and demeanor, we afford appropriate deference to the trial court's ruling. Moreover, the evidence does not show erratic driving that would support a reasonable belief that the driver was unable to safely operate the vehicle. *See Mothershed*, 2012 WL 3104370, at *4.

The trial court's findings and conclusions are supported by the record, and because we defer to the trial court's ruling on credibility determinations, we cannot

conclude that the trial court abused its discretion when it concluded that there was no justification for the stop and granted Johnson's motion to suppress. Accordingly, the State's sole issue on appeal is overruled.

We affirm the order of the trial court.


JIM R. WRIGHT

CHIEF JUSTICE


June 26, 2014

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.