TEXAS DEPARTMENT OF PUBLIC
SAFETY, Appellant,

v.

Joseph Dean VASQUEZ, Appellee.

No. 08–04–00181–CV.

Court of Appeals of Texas,
El Paso.

Aug. 23, 2005.

Rene S. Lial, ALR Appeals, Austin, for appellant.

Joseph D. Vasquez, El Paso, appellee pro se.

Before BARAJAS, C.J., McCLURE, and CHEW, JJ.

## *OPINION*

DAVID WELLINGTON CHEW, Justice.

The Texas Department of Public Safety ("DPS") appeals the county court at law's reversal of an administrative decision, entered after a contested case hearing, authorizing the suspension of Appellee Joseph Dean Vasquez's driver's license. In two issues, the DPS argues that the trial court erred in reversing the ALJ's administrative decision because: (1) it substituted its judgment for that of the ALJ in determining witness credibility and (2) the administrative decision was supported by substantial evidence We reverse and render judgment affirming the administrative law judge's decision.

On the evening of August 30, 2003, El Paso Police Officer Paul Portillo was patrolling on Interstate-10 eastbound when he noticed a vehicle swerving from left to right in the right traffic lane during heavy traffic. Officer Portillo also observed the vehicle straddle and cross over the marked traffic lanes at least three times. Based on these observations, Officer Portillo decided to start a DWI investigation. Officer Portillo turned on his emergency lights and then activated his siren after he had been following the vehicle for half a mile. The vehicle pulled over on the side of the freeway and stopped in the emergency lane. Officer Portillo approached the driver's side of the vehicle, a Cadillac Escalade SUV. He observed that there were three occupants in the vehicle. The driver, Mr. Vasquez, rolled down the window. Officer Portillo asked Mr. Vasquez for his driver's license and insurance. According to the officer, Mr. Vasquez fumbled through his wallet while trying to locate his driver's license and did not have proof of insurance. Officer Portillo smelled an odor of alcohol coming from Mr. Vasquez's person and breath. He also observed that Mr. Vasquez had bloodshot eyes and slurred speech.

Officer Portillo asked Mr. Vasquez to step out the vehicle. Officer Portillo noted that upon exiting, Mr. Vasquez showed apparent disregard for the cell phone that was on the driver's seat between his legs. The officer recalled that he had to draw Mr. Vasquez's attention to the cell phone in order to prevent it from falling onto the ground. Mr. Vasquez was escorted to the rear of the vehicle and asked to perform three field sobriety tests, which according to Officer Portillo, he failed. Mr. Vasquez was placed under arrest and his vehicle was turned over to his brother and friend, the other passengers in the vehicle. The statutory warnings in document DIC–24 were given to Mr. Vasquez. Mr. Vasquez agreed to give a breath specimen for testing, but after transport to the police station he refused to give a breath specimen, resulting in the 180–day suspension of his

driver's license. *See* Tex.Transp.Code Ann. § 724.035(a)(Vernon Supp.2004–05).

At the contested administrative hearing, Mr. Vasquez testified that in the initial stop Officer Portillo had approached the driver's side of his vehicle, reached inside the truck, turned off the ignition, and took his keys. Mr. Vasquez recalled that he was still sitting in the driver's seat when the officer took possession of his keys. Officer Portillo, however, offered conflicting testimony. According to Officer Portillo, he did not reach into the vehicle at any time during the initial contact. Rather, he believed that it would have been dangerous to do so, and further, stated that he had no reason to reach into the vehicle. On cross-examination and redirect, Officer Portillo maintained that he did not reach into the vehicle to take the keys out of the ignition while Mr. Vasquez was still sitting in the driver's seat. Officer Portillo conceded that it was possible that after asking Mr. Vasquez to step out of the vehicle, he could have taken the keys out of the ignition for officer safety, however, he did not recall having done so in this case.

The other passengers in the vehicle offered testimony regarding the removal of Mr. Vasquez's keys. James Vasquez recalled that Officer Portillo asked his brother to step out of the vehicle and after his brother complied with that request, the officer reached into the vehicle and took the keys. Officer Portillo then told him and the other occupant, Mark Artalejo, to stay in the vehicle and not to leave it. James Vasquez then saw his brother being escorted to the back of the vehicle. Thirty minutes later, the officer informed him that his brother was going to be arrested and gave them custody of the vehicle. Mark Artalejo could not recall if anyone took the keys out of the ignition, but remembered that the officer gave him the keys later on that evening when he was given custody of the vehicle.

In its findings of fact, the administrative law judge (ALJ) found that:

(1) On August 30, 2003, reasonable suspicion to stop [Vasquez] or probable cause to arrest [Vasquez] existed. Texas Officer P. Portillo's testimony indicates that he observed [Vasquez's] vehicle traveling East on Interstate–10 before the Lee Trevino exist, swerving within its own right lane, and observed said vehicle straddle into the other traffic lane, and into the right emergency lane, three times. He turned on his lights, but said vehicle continued about one mile, until the Officer turned on his siren also. The vehicle stopped at the America's Avenue. The Officer then proceeded with a traffic stop and approached the vehicle. The incident occurred in a public highway in El Paso County, Texas.

(2) On the same date, probable cause to arrest [Vasquez] existed, in that probable cause existed to believe that [Vasquez] was operating a motor vehicle in a public place while intoxicated, based on the facts stated in Findings of Fact No. 1 and the findings outlined below. On contact with [Vasquez], the Officer observed that [Vasquez] depicted signs of intoxication. While speaking to [Vasquez], the Officer detected an odor of alcohol coming from [Vasquez's] breath. [Vasquez] also had slurred speech and bloodshot eyes. The Officer testified that [Vasquez] fumbled through his wallet looking for requested documentation and that his cell phone was placed between his legs and fell upon him exiting the vehicle and dragged the cell phone,

unaware that he was doing so. Further, [Vasquez] showed clues of intoxication as he performed the Horizontal Gaze Nystagmus and the Standardized Field Sobriety Tests....

(3) [Vasquez] promulgated the argument that the officer exceeded his scope by reaching in and taking the keys out of the ignition. [Vasquez] testified that he was still seated behind the wheel when the officer reached in. Contradictory testimony to this issue was given by James D. Vasquez, [Vasquez's] brother, who testified that [Vasquez] stepped out of the vehicle, and then the officer removed the keys. The Officer testified that keys are removed for security reasons. The second witness, Mark Artalejo, did not recall if anyone removed the keys from the ignition but did remember that the Officer handed him the keys. The Officer's testimony is collaborated [sic] by James Vasquez's testimony, in that he stated he did not reach into the vehicle when [Vasquez] was seated behind the wheel, and the undersigned Administrative Law Judge finds the Officer's testimony credible.

(3)[sic] [Vasquez] was placed under arrest and was properly advised of the warnings required under Tex. Transp. Code Ann. § 724.015. [Vasquez] was then asked to submit a specimen of his breath for analysis. After being requested to submit a specimen of breath, [Vasquez] refused.

In its conclusions of law, the ALJ determined that based on its findings of fact, DPS had proved the issues set out in Section 724.042 and that Mr. Vasquez's driver's license was subject to suspension for 180 days pursuant to Section 724.035. Thus, the ALJ ordered that DPS was authorized to suspend Mr. Vasquez's driving privileges for 180 days.

Mr. Vasquez appealed the administrative decision to the El Paso County Court at Law No. 3. At the trial court hearing, Mr. Vasquez argued that Officer Portillo exceeded the scope of his investigatory stop by removing the keys from his vehicle either immediately or after Mr. Vasquez exited the vehicle. Specifically, Mr. Vasquez argued that removing the keys before Mr. Vasquez performed any field sobriety tests constituted an illegal detention or arrest that went beyond the scope of a traffic stop and, in this case, there was no issue of safety. Vasquez also argued that his testimony and Officer Portillo's testimony were not inconsistent because Officer Portillo never denied taking the keys. Notwithstanding this argument, Mr. Vasquez also asserted that the ALJ had erred in its determination of the credibility of the witnesses.

The trial court granted Mr. Vasquez's petition and reversed the administrative decision, finding that it was not supported by substantial evidence. In addition, the trial court specifically found that:

[Vasquez] is an Officer of the Court,[1] and under oath testified that his keys were removed by Officer Portillo immediately upon approaching his vehicle. Since Officer Portillo indicated he could not recall when or if he removed the keys from [Vasquez], the testimony is clear that at some point he had the keys in his possession, because they were handed over to passenger Mark Artalejo. Although the Officer testified that he noticed [Vasquez] to have an odor of

---

1. Mr. Vasquez is an attorney at law in El Paso County, Texas.

alcohol coming from his breath, slurred speech, bloodshot eyes, fumbled through his wallet, and the dragging of the cell phone, this Court is specifically finding that [Vasquez] had already been placed under arrest, without probable cause, by the time the Officer noticed the indicators. Since probable cause did not exist at the time Officer Portillo 'arrested' [Vasquez], this Court is finding that those indicators should be suppressed as the fruit of an illegal arrest thus this Court orders removal of suspension immediately.

DPS now appeals the trial court's order reversing the administrative decision and removal of the suspension of Mr. Vasquez's driver's license.

In two issues, DPS contends that the trial court erred in reversing the ALJ's decision because that decision was supported by substantial evidence and, specifically, the trial court erred in substituting its judgment for that of the ALJ in determining the credibility of witness testimony regarding if or when Officer Portillo took Mr. Vasquez's keys. As these issues are related, we will address them together.

Courts review administrative license suspensions under a substantial evidence standard. *See* TEX.TRANSP.CODE ANN. § 524.043 (Vernon 1999); TEX.GOV'T CODE ANN. § 2001.174 (Vernon 2000); *see also Mireles v. Texas Dep't of Pub. Safety*, 9 S.W.3d 128, 131 (Tex.1999). Under this standard of review for administrative decisions in contested cases, the court shall reverse or remand the case for further proceedings if the appellant's substantial rights have been prejudiced because of the administrative findings, inferences, conclusions, or decision are: (A) in violation of a constitutional or statutory provision; (B) in excess of the agency's statutory authority; (C) made through unlawful procedure; (D) affected by other error of law; (E) not

reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or (F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. TEX. GOV'T CODE ANN. § 2001.174(2); *see also Tex. Dep't of Pub. Safety v. Cantu*, 944 S.W.2d 493, 495 (Tex.App.-Houston [14th Dist.] 1997, no writ)("[T]o reverse an agency decision, the reviewing court must conclude (1) that the agency's decision was erroneous for one of the reasons enumerated in subsections (A) through (F), and (2) that substantial rights of the appellant have thereby been prejudiced.").

The issue for the reviewing court is not whether the agency's decision is correct, but only whether the record demonstrates some reasonable basis for the agency's action. *Mireles*, 9 S.W.3d at 131. The court may not substitute its judgment for that of the agency. *Id.; see also* TEX. GOV'T CODE ANN. § 2001.174. The findings and conclusions of the agency are presumed to be valid. *Tex. Dep't of Pub. Safety v. Stacy*, 954 S.W.2d 80, 83 (Tex. App.-San Antonio 1997, no writ). In contested cases, the reviewing court must affirm the administrative findings if there is more than a scintilla of evidence to support them. *Mireles*, 9 S.W.3d at 131; *See also R.R. Comm'n of Texas v. Torch Operating Co.*, 912 S.W.2d 790, 792–93 (Tex.1995)(substantial evidence requires only more than a mere scintilla of evidence). The burden for overturning an agency ruling is formidable. *Tex. Dep't of Pub. Safety v. Pucek*, 22 S.W.3d 63, 67 (Tex.App.-Corpus Christi 2000, no pet.). In fact, an administrative decision may be sustained even if the evidence preponderates against it. *Mireles*, 9 S.W.3d at 131. The appellate court reviews the trial court's determination *de novo*. *Tex. Dep't of Pub. Safety v. Cuellar*, 58 S.W.3d 781,

783 (Tex.App.-San Antonio 2001, no pet.); *Raesner v. Tex. Dep't of Pub. Safety*, 982 S.W.2d 131, 132 (Tex.App.-Houston [1st Dist.] 1998, pet. denied).

DPS argues here that the trial court erred in concluding that the ALJ's upholding of the license suspension was not supported by substantial evidence and, in particular, asserts that the trial court substituted its judgment for that of the ALJ in reaching its conclusion that Mr. Vasquez was arrested without probable cause.

At the license suspension hearing, DPS was required to prove by a preponderance of the evidence that: (1) reasonable suspicion or probable cause existed to stop or arrest Mr. Vasquez; (2) probable cause existed to believe that Mr. Vasquez was operating a motor vehicle in a public place while intoxicated; (3) Mr. Vasquez was placed under arrest by the officer and was requested to submit to the taking of a specimen; and (4) Mr. Vasquez refused to submit to the taking of a specimen on request of the officer. *See* TEX.TRANSP. CODE ANN. §§ 724.042–.043 (Vernon Supp. 2004–05); *Texas Dep't of Pub. Safety v. Norrell*, 968 S.W.2d 16, 18 (Tex.App.-Corpus Christi 1998, no pet.).

■ In this case, the ALJ found that there was a reasonable suspicion to stop Mr. Vasquez based on Officer Portillo's testimony regarding his initial observations of Mr. Vasquez's vehicle swerving within its lane and straddling other traffic lanes at least three times. A police officer may stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion, supported by articulable facts that taken together with rational inferences from those facts, lead him to conclude that the person detained actually is, has been, or soon will be engaged in criminal activity. *Woods v. State*, 956 S.W.2d 33, 38 (Tex.Crim.App.1997). Whether reasonable suspicion exists is de-

termined from the totality of the circumstances in the particular case. *Id.*

■ At the hearing, Officer Portillo testified that he had been employed with the El Paso Police Department for fifteen years and on the night of the incident, he was on Interstate–10 while on assignment with the DWI unit. That night, Mr. Vasquez's vehicle caught the officer's attention because it was swerving left and right and straddling other traffic lanes at least three times in heavy traffic. Based on these observations, Officer Portillo decided to conduct an investigatory stop for driving while intoxicated. An officer may be justified in stopping a driver based upon a reasonable suspicion of driving while intoxicated. *James v. State*, 102 S.W.3d 162, 172 (Tex.App.-Fort Worth 2003, no pet.). The administrative record contains sufficient facts and demonstrates a reasonable basis for the ALJ's finding that Officer Portillo had reasonable suspicion to stop Mr. Vasquez to investigate him for driving while intoxicated.

■ In this case, the ALJ made an affirmative finding that probable cause to arrest Mr. Vasquez existed, in that probable cause existed to believe that Mr. Vasquez was operating a motor vehicle in a public place while intoxicated. The finding was based on the facts regarding the manner of driving that led to the stop, Officer Portillo's observations during the initial contact with Mr. Vasquez, and signs of intoxication as indicated by Mr. Vasquez's performance of field sobriety tests.

■ Probable cause exists where the police have reasonably trustworthy information sufficient to warrant a reasonable person to believe a particular person has committed or is committing an offense. *See Guzman v. State*, 955 S.W.2d 85, 87 (Tex.Crim.App.1997). Probable cause requires more than mere suspicion but far less evidence than that needed to support

a conviction or even that needed to support a finding by a preponderance of the evidence. *Id.*

Here, Officer Portillo stated that the stop occurred on Interstate–10 and in his initial contact with the driver, Mr. Vasquez, he noticed an odor of alcohol on Mr. Vasquez's person and breath. He also observed that Mr. Vasquez had bloodshot eyes and slurred speech. Mr. Vasquez fumbled through his wallet while locating his driver's license and appeared unaware of his actions with regard to a personal belonging while exiting his vehicle. In addition, Officer Portillo testified that Mr. Vasquez failed the field sobriety tests he was asked to perform and was then placed under arrest. Mr. Vasquez testified that the officer took possession of his keys immediately upon approaching his vehicle and did so while Mr. Vasquez was still sitting in the driver's seat. Officer Portillo, however, denied having taken Mr. Vasquez's keys from the ignition of the vehicle at any time during the initial contact. Moreover, he stated he would not have reached into the vehicle while Mr. Vasquez was still sitting in the driver's seat.

In reversing the ALJ's decision, the trial court specifically found that Mr. Vasquez had already been placed under arrest, without probable cause, by the time Officer Portillo noticed signs of intoxication, namely the odor of alcohol on Mr. Vasquez's breath, his slurred speech, his bloodshot eyes, the fumbling through the wallet, and the dragging of the cell phone. It is evident that the trial court's determination is premised solely upon Mr. Vasquez's testimony concerning the immediate removal of the keys. The ALJ's findings specifically state that it found that the officer's testimony, in which he stated he did not reach into the vehicle when Mr. Vasquez was seated behind the wheel, to be credible. Thus, in order to reach the conclusion that it did, the trial court must have substituted its judgment for that of the ALJ with regard to the credibility of the witnesses and the weight of the evidence.

The ALJ was the sole judge of the credibility of the witnesses and was free to accept the testimony of any witness or even accept "part of the testimony of one witness and disregard the remainder." *Ford Motor Co. v. Motor Vehicle Bd. of Texas Dep't. of Transp.*, 21 S.W.3d 744, 757 (Tex.App.-Austin 2000 pet. denied), *citing Southern Union Gas Co. v. Railroad Comm'n*, 692 S.W.2d 137, 141–42 (Tex.App.-Austin 1985, writ ref'd n.r.e.). In this case, the ALJ decided to accept the officer's testimony over Mr. Vasquez's version of events. We conclude that more than a scintilla of evidence exists to support the administrative finding that there was probable cause to arrest Mr. Vasquez and probable cause to believe that Mr. Vasquez was operating a motor vehicle in a public place while intoxicated.[2]

In reviewing the administrative record, we also find that there was sub-

---

2. Apparently, the trial court equated the removal of the keys to a formal arrest. In its brief, DPS asserts that the removal of the keys of an officer does not equal to an arrest, but rather is a safety measure during an investigative detention. Arrests and investigative detentions are both forms of seizure, each involving varying degrees of restraint on an individual's liberty. *See Woods v. State,* 970 S.W.2d 770, 775 (Tex.App.-Austin 1998, pet. ref'd); *Dean v. State,* 938 S.W.2d 764, 768–69 (Tex.App.-Houston [14th Dist.] 1997, no pet.).

Arrests constitute the highest restriction on individual liberty and are accompanied by circumstances that would indicate to a reasonable person that the individual has been actually restricted or restrained. *Dean,* 938 S.W.2d at 768–69, *citing Hoag v. State,* 728 S.W.2d 375, 379 (Tex.Crim.App.1987). Even assuming that Mr. Vasquez's keys were immediately removed during his initial contact with Officer Portillo, we would have concluded that he was detained for investigative purposes and had not yet been arrested, and that

stantial evidence to support the ALJ's affirmative finding that Mr. Vasquez was placed under arrest by Officer Portillo, was properly advised of the statutory warnings, was asked to submit a breath specimen for analysis, and refused the request. Through Officer Portillo's testimony and documentary evidence in the record, the evidence shows that Mr. Vasquez was arrested for driving while intoxicated, was given the statutory warnings in document DIC–24, that he initially agreed to give the breath specimen, but later refused to do so after being transported to the police station.

We conclude that there was substantial evidence to support the ALJ's findings on each of the elements required under TEX. TRANSP.CODE ANN. § 724.042. Therefore, the trial court erred in reversing the ALJ's administrative decision authorizing the suspension of Mr. Vasquez's driver's license. Issues One and Two are sustained.

We reverse the trial court's order and render judgment upholding the administrative decision authorizing the suspension of Mr. Vasquez's driver's license.

under the circumstances, the officer's action was a reasonable safety measure given there were two passengers left in the vehicle and the location of the investigative stop.