COURT OF APPEALS

                                       SECOND DISTRICT OF TEXAS

                                                   FORT WORTH

 

 

                                        NO.
2-08-276-CV

 

 

TEXAS DEPARTMENT OF                                                     APPELLANT

PUBLIC SAFETY

 

                                                   V.

 

JEFFERY BRUCE AXT                                                              APPELLEE

 

                                              ------------

 

         FROM
COUNTY COURT AT LAW NO. 3 OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

                                       I.  Introduction








Appellant
Texas Department of Public Safety (the Department) appeals the trial court=s order
reversing an administrative order that suspended appellee Jeffery Bruce Axt=s driver=s
license for refusing to provide a breath specimen.  In three issues, the Department argues that
the trial court erred by reversing the administrative law judge=s (ALJ=s)
findings that reasonable suspicion existed for the officers to stop Axt and
that probable cause existed to believe that Axt had been driving in a public
place while intoxicated.  Because we hold
that the officers did not have reasonable suspicion to stop Axt, we will
affirm.

                   II.  Factual and Procedural
Background

Axt was
driving home from a bar at approximately 2:30 a.m. early one morning when he
entered the controlled access parking lot for the Arlington police
department.  The parking lot=s
entrance and exit are normally restricted by yellow arms that lower to block
entry and exit.  That night, however, the
yellow arms were raised, permitting entrance to the lot.  A sign at the parking lot entrance by the
raised arms indicated restricted access for authorized personnel only.

Officers
Joseph Balson and Meredith DeWall were standing outside the police department=s sally
port when Axt drove into the parking lot via the entrance with the raised
arm.  Although the officers did not see
Axt=s car
enter the lot, they saw the car inside the lot and noticed that the driver
appeared to be lost and had a difficult time turning and reversing his car to
position it toward the lot=s
exit.  The officers stepped in front of
Axt=s car
while it was still inside the parking lot and used a flashlight to direct Axt
to stop.  Officer Balson then noticed
that Axt had red, glassy eyes and slurred speech and appeared disoriented.  The officer also detected a strong odor of
alcohol coming from the vehicle.  Axt
admitted that he had just left a bar down the street.








The officers detained Axt for field sobriety
testing and called Officer Travis Kuhn to administer the tests.  Officer Kuhn determined that Axt was
intoxicated, arrested him, and after warning him of the consequences of
refusing a breath test, requested that he provide a breath specimen.  Axt refused, and the Department subsequently
suspended his driver=s license.

Axt requested an administrative hearing
regarding the suspension.  Officer Balson
was the Department=s sole witness at the
administrative hearing.  The ALJ found
that the officers had reasonable suspicion to stop Axt and that Axt was
operating a motor vehicle in a public place while intoxicated.  The ALJ thus authorized the Department to
suspend Axt=s driver=s
license for 180 days.  Axt appealed the
ALJ=s
decision to the trial court.  The trial
court reversed the ALJ=s decision, holding that there
was no reasonable suspicion to stop Axt. 
This appeal by the Department followed. 

 III. 
Driver=s License Suspension Procedures and Standard of
Review








At a driver=s
license suspension hearing, the Department bears the burden of proving that (1)
reasonable suspicion or probable cause existed to stop or arrest the person;
(2) probable cause existed to believe that the person was operating a motor
vehicle in a public place while intoxicated; (3) the person was placed under
arrest by the officer and subsequently asked to submit to a breath or blood
test; and (4) the person refused to submit to the breath or blood specimen.  See Tex. Transp. Code Ann. ' 724.042
(Vernon Supp. 2008).

The driver may appeal the ALJ=s
decision, in which case the county court on appeal will review the ALJ=s
decision under the substantial evidence standard of review.  See Mireles v. Tex. Dep=t of
Pub. Safety, 9 S.W.3d 128, 131 (Tex. 1999).  Additionally, the court of appeals reviews
the trial court=s substantial evidence review de
novo.  Tex. Dep=t of
Pub. Safety v. Valdez, 956 S.W.2d 767, 769 (Tex. App.CSan
Antonio 1997, no pet.).

The issue for the reviewing court is not
whether the agency=s decision is correct, but only
whether the record demonstrates some reasonable basis for the agency=s
action.  Mireles, 9 S.W.3d at 131;
Tex. Dep=t of Pub. Safety v. Vasquez, 225
S.W.3d 47, 52 (Tex. App.CEl Paso 2005, no pet.).  The court may not substitute its judgment on
the weight of the evidence for that of the ALJ and must uphold the ALJ=s
finding even if the evidence preponderates against it so long as enough
evidence suggests that the ALJ=s
determination was within the bounds of reasonableness.  Mireles, 9 S.W.3d at 131; S.W. Pub.
Serv. Co. v. Pub. Util. Comm=n of
Tex., 962 S.W.2d 207, 215 (Tex. App.CAustin
1998, pet. denied).








The
burden for overturning an agency ruling is formidable.  Tex. Dep=t of
Pub. Safety v. Pucek, 22 S.W.3d 63, 67 (Tex. App.CCorpus
Christi 2000, no pet.).  If there is
evidence to support the ALJ=s
findings, its decision must be upheld.  Tex.
Dep=t of Pub. Safety v. Stacy, 954
S.W.2d 80, 83 (Tex. App.CSan Antonio 1997, no writ).  But a trial court may reverse an ALJ=s
determination if a substantial right of the appellant has been prejudiced
because the ALJ=s findings, inferences,
conclusions, or decisions are not reasonably supported by substantial evidence
considering the record as a whole.  Tex.
Gov=t Code
Ann. '
2001.174(2)(E) (Vernon 2008).

                     IV.  Reasonable Suspicion to
Stop Axt

In its
first issue, the Department argues that the trial court erred by reversing the
ALJ=s
finding that the officers had reasonable suspicion to stop Axt.  The Department contends that reasonable
suspicion existed because Axt committed criminal trespass by entering the
Arlington Police Department=s
parking lot.








A police
officer may stop and briefly detain a person for investigative purposes if the
officer has a reasonable suspicion, supported by articulable facts, that the
person detained actually is, has been, or soon will be engaged in criminal
activity.  See Tex. Dep=t of
Pub. Safety v. Fisher, 56 S.W.3d 159, 163 (Tex. App.CDallas
2001, no pet.) (citing Tex. Dep=t of
Pub. Safety v. Chang, 994 S.W.2d 875, 877 (Tex. App.CAustin
1999, no pet.)).  This is an objective
standard that disregards any subjective intent of the officer making the stop
and looks solely to whether an objective basis for the stop exists.  See Ford v. State, 158 S.W.3d
488, 492B93 (Tex.
Crim. App. 2005).  The burden on the
State is to demonstrate the reasonableness of the stop.  See Fisher, 56 S.W.3d at 163.  The State is not required to show an offense
was actually committed or to prove every element of a specific offense,[1]
but only that the officer reasonably believed a crime was in progress. Fisher,
56 S.W.3d at 163; Martinez v. State, 29 S.W.3d 609, 611B12 (Tex.
App.CHouston
[1st Dist.] 2000, pet. ref=d).








The
Texas Penal Code defines criminal trespass to include entry onto the property of
another without effective consent and with notice that the entry was
forbidden.  Tex. Penal Code Ann. '
30.05(a)(1) (Vernon Supp. 2008).  Even
though the statutory language of section 30.05(a) does not prescribe a culpable
mental state, one is nevertheless required. 
See Tex. Pen. Code Ann. ' 6.02(b)
(Vernon 2008).  Intent, knowledge, or
recklessness is sufficient to establish responsibility for criminal
trespass.  West v. State, 567
S.W.2d 515, 516 (Tex. Crim. App. [Panel Op.] 1978); Day v. State, 532
S.W.2d 302, 306 n.2 (Tex. Crim. App. 1976) (op. on reh=g), disapproved
of on other grounds by Hall v. State, 225 S.W.3d 524 (Tex. Crim. App. 2007);
see Tex. Pen. Code Ann. '
6.02(c).  Thus, the offense of criminal
trespass consists of the following elements: 
(1) a person (2) without effective consent (3) enters or remains on the
property or in a building of another (4) knowingly or intentionally or
recklessly (5) when he had notice that entry was forbidden or received notice
to depart but failed to do so.  See
Day, 532 S.W.2d at 306.

Regarding
the fifth elementCnoticeCthe
court of criminal appeals has explained that

the obvious intent of the
Legislature in including the Anotice@
requirement in the criminal trespass statute . . .  [was] to prevent an innocent trespass upon
the Aproperty@ of
another from incurring criminal liability. 
For example, where one innocently trespasses upon the unfenced and
unposted land of another, no criminal offense would be committed.

Id. Section
30.05 defines Anotice@ to
include Afencing
or other enclosure obviously designed to exclude intruders@ and Asigns
posted on the property or at the entrance to the building, reasonably likely to
come to the attention of intruders, indicating that entry is forbidden.@  Tex. Penal Code Ann. '
30.05(b)(2)(B)B(C).  Thus, as a matter of law, no criminal trespass
may occur in the absence of notice that entry is prohibited.  See id. '
30.05(a)(1); Moreno v. State, 702 S.W.2d 636, 640 (Tex. Crim. App.
1986).


















 
     Here, we are concerned with
the ALJ=s
determination that the officers had reasonable articulable suspicion that Axt
was committing the offense of criminal trespass because the record establishes
that on the night in question public access to the lot was not restricted.  The Department did not need to prove that Axt
actually committed criminal trespass by entering the parking lot; rather, it
needed to prove that Officer Balson reasonably believed that Axt was committing
the offense.  See Fisher, 56
S.W.3d at 163; Martinez, 29 S.W.3d at 611B12.  But despite the restricted access sign,
Officer Balson (the officer who stopped Axt and the only witness at the
administrative hearing) testified and put in his report that on the night in
question the arms to the entrance and exit gates were upCallowing
public access to the parking lotCwhen Axt
entered the lot at 2:30 in the morning.[2]  He further testified that Axt appearedto be
turning around to leave, rather than attempting to park in, the parking lot
when he stopped him.  Thus, Officer
Balson could not have had a reasonable basis to believe that Axt was committing
criminal trespass in light of his testimony and his police report indicating
that the parking lot=s open gates allowed public
access on the night in question.  The
Department has failed to point to evidence in the record that would lead a
reasonable person to believe that Axt was committing criminal trespass by
turning around in a parking lot at 2:30 a.m. when the lot=s gated
arms were raised.  See Viveros v.
State, 828 S.W.2d 2, 4 (Tex. Crim. App. 1992) (holding that driving very
slowly was not suspicious activity that would create a reasonable belief that
such activity was related to crime).

For
these reasons, we hold that the Department failed to satisfy its burden to demonstrate
that an objective basis for the stop existed. 
See Ford, 158 S.W.3d at 492B93; Fisher,
56 S.W.3d at 163.  Applying the
substantial evidence standard, we hold that the trial court correctly found
that the ALJ=s reasonable suspicion
determination was not supported by substantial evidence.  See Tex. Gov=t Code
Ann. ' 2001.174(2);
Mireles, 9 S.W.3d at 131; Vasquez, 225 S.W.3d at 52.








Because
of our disposition of the Department=s first
issue, we need not address its second or third issues.  See Tex. R. App. P. 47.1.  We affirm the trial court=s
judgment.

 

SUE WALKER

JUSTICE

 

PANEL:  CAYCE, C.J.; DAUPHINOT
and WALKER, JJ.

 

CAYCE, C.J. filed a dissenting opinion.

 

DELIVERED: June 25, 2009

 

 











 
 
 
 
 
 
 




 

 

 

 

 

 

                                      COURT OF APPEALS

                                       SECOND DISTRICT OF TEXAS

                                                   FORT WORTH

 

 

                                        NO.
2-08-276-CV

 

 

TEXAS DEPARTMENT OF PUBLIC                                         APPELLANT

SAFETY

                                                   V.

 

JEFFERY BRUCE AXT                                                              APPELLEE

 

                                              ------------

 

         FROM
COUNTY COURT AT LAW NO. 3 OF TARRANT COUNTY

 

                                              ------------

 

                                   DISSENTING OPINION

 

                                              ------------








I
respectfully dissent.  I believe the
Department met its burden of proving that reasonable suspicion existed to stop
Axt=s
vehicle.  I further believe that
substantial evidence supports the administrative law judge=s (ALJ)
conclusion that Officer Kuhn had probable cause to believe Axt was operating a
motor vehicle while intoxicated on a public road.  Therefore, I would sustain the Department=s
issues, reverse the trial court=s
judgment and render judgment reinstating the ALJ=s order
authorizing the Department to suspend Axt=s driver=s
license.

The
background facts are as follows:  

At
around 2:30 a.m. on October 27, 2007, two Arlington police officers saw Axt
driving a car in a restricted jail parking lot that is marked with signs
declaring the area to be for authorized personnel only.  The parking lot is also controlled by an
access gate, but that night the gate was malfunctioning and allowed entry and
exit to any vehicle.  Axt=s car was
already through the gate before the officers noticed it.  Axt appeared to be lost and had a difficult
time backing and reversing his car to exit the area. 








The
police officers approached the car while it was still in the jail parking lot
and directed Axt to stop.  Officer Joseph
Balsa noticed that Axt had red, glassy eyes, was slurring his speech, and
appeared disoriented.  The officer also
detected a strong odor of alcohol coming from the vehicle.  Axt admitted that he had just come from a bar
down the street.  Officer Balsa and the
other officer detained Axt for field sobriety testing and called Officer Travis
Kuhn to administer the tests.  Officer
Kuhn determined that Axt was intoxicated, arrested Axt, and after warning Axt
of the consequences of refusing a breath test, requested that he provide a
breath specimen.  Axt refused, and the
Department subsequently suspended his driver=s
license. 

Axt
requested an administrative hearing regarding the suspension.  The ALJ concluded that Axt was legally
detained and issued an order upholding the suspension of Axt=s driver=s
license.  Axt appealed the ALJ=s
decision to the trial court, complaining that the evidence did not support the
ALJ=s
conclusions that the officers had reasonable suspicion to stop Axt=s
vehicle and probable cause to believe that Axt had operated a vehicle in a
public place while intoxicated.  The
trial court reversed the ALJ=s
decision, holding that there was neither reasonable suspicion nor probable
cause.  This appeal followed.








Administrative
license revocation cases are reviewed under the substantial evidence standard
of review.[1]  The issue for the reviewing court is not
whether the ALJ=s decision was correct, but only
whether the record demonstrates some reasonable basis for the ALJ=s
action.[2]  The court may not substitute its judgment on
the weight of the evidence for that of the ALJ and must uphold the ALJ=s
finding even if the evidence preponderates against it so long as enough
evidence suggests the ALJ=s determination was within the
bounds of reasonableness.[3]  If there is evidence to support the ALJ=s
findings, the ALJ=s decision must be upheld.[4]  Any evidentiary ambiguities should be
resolved in favor of the ALJ=s
findings.[5]  The burden for overturning an agency ruling
is formidable.[6]








At a
license suspension hearing, the Department bears the burden of proving: (1)
reasonable suspicion or probable cause existed to stop or arrest the person;
(2) probable cause existed to believe that the person was operating a motor vehicle
in a public place while intoxicated; (3) the person was placed under arrest by
the officer and subsequently asked to submit to a breath or blood test; and (4)
the person refused to submit to the breath or blood test.[7]  There is no dispute in this case regarding
the last two requirements.  Accordingly,
I focus on whether substantial evidence supports the ALJ=s
conclusions that reasonable suspicion existed to stop Axt=s
vehicle and that probable cause existed to believe that Axt was operating a
motor vehicle in a public place while intoxicated.

The
Department argues in its first issue that the officers had reasonable suspicion
to stop Axt because they reasonably believed Axt may have been committing the
offense of criminal trespass when he entered the restricted parking lot.[8]  Axt asserts, and the majority holds, that
there was no reasonable suspicion for the stop because the Department did not
offer evidence to support every element of criminal trespass.  I agree with the Department.








The
Department is not required to show an offense was actually committed or to
prove every element of a specific offense to establish reasonable suspicion,
but only that the officer reasonably believed a crime was in progress.[9]  To justify an investigative stop, the officer
must have specific and articulable facts from which he can reasonably surmise
that the detained person may be associated with a crime.[10]  In other words, the officer must reasonably
suspect that (1) some activity out of the ordinary is occurring or has
occurred, (2) the detained person is connected with the unusual activity, and
(3) the activity is related to a crime.[11]  Circumstances which raise a suspicion that
illegal conduct is taking place need not themselves be criminal; they only need
to include facts which render the likelihood of criminal conduct greater than
it would be otherwise.[12]

After
reviewing the administrative record, I believe that substantial evidence
supports the ALJ=s reasonable suspicion
holding.  Two police officers observed
Axt driving a motor vehicle in a restricted jail parking lot at around 2:30
a.m.  Although the gate to the parking
lot was malfunctioning and allowed entry and exit to any vehicle, the parking
lot was marked with signs declaring the area to be for authorized personnel
only.  Axt=s
late-night presence in a jail parking lot, where signs warned that the area was
closed to the public, warranted the officers=
suspicion that Axt was criminally trespassing.[13]  I would, therefore, sustain the Department=s first
issue.








In its
second issue, which the majority does not reach because of its disposition of
the Department=s first issue, the Department
argues that substantial evidence supports the ALJ=s
finding that Officer Kuhn had probable cause to believe that Axt was driving
while intoxicated in a public place.  Axt
does not dispute that he was driving while intoxicated.  Rather, Axt contests the ALJ=s
determination that probable cause existed to believe Axt was driving while
intoxicated in a public place because, he argues, (1) the jail parking lot was
not a public place and (2) neither officer saw him driving before he entered
the jail parking lot. 








Under
section 724.042 of the Texas Transportation Code, in a driver=s
license suspension hearing, the ALJ must determine Awhether
probable cause existed to believe . . . [the license holder] was operating a
motor vehicle in a public place while intoxicated.@[14]  The Department did not have to prove that Axt
was in fact driving while intoxicated in a public place, but only that there
was probable cause to believe that he had been driving in a public place while
intoxicated.[15]  Probable cause exists where the police have
reasonably trustworthy information sufficient to warrant a reasonable person to
believe a particular person has committed or is committing an offense.[16]  Probable cause deals with probabilities and
requires more than mere suspicion, but far less evidence than that needed to
support a conviction or even that needed to support a finding by a
preponderance of the evidence.[17]








Officer
Kuhn=s report
and probable cause statement indicates that (1) upon his arrival at the jail
parking lot, Officer Kuhn was informed that Axt admitted that he had just come
from a bar down the street, (2) Officer Kuhn immediately noticed that Axt had
slurred speech, trouble balancing, and an odor of an alcoholic beverage coming
from his breath and person, (3) Officer Kuhn administered Standardized Field
Sobriety Tests including the Horizontal Gaze Nystagmus test, which showed five
out of six clues of intoxication, the Walk and Turn test, which demonstrated
four out of eight clues of intoxication, and the One Leg Stand, which showed
three out of four clues of intoxication, and (4) during the field sobriety
tests, Officer Kuhn observed that Axt had difficulty balancing and repeatedly
failed to follow instructions.  Officer
Kuhn reported that he had probable cause to arrest or detain Axt because of Axt=s Aslurred
speech, odor of alcoholic beverage emitted from breath and person, [and]
difficulty balancing,@ as well as the results of the
sobriety tests.  In addition, Officer
Balsa observed that Axt had red, glassy eyes.

Based on
this record, I would hold that substantial evidence supports the ALJ=s
conclusion that the officers had probable cause to believe Axt was operating a
motor vehicle while intoxicated on a public road.  While the officers did not specifically
observe Axt driving on the public road before he entered the jail parking lot,
they could have reasonably inferred that Axt became intoxicated at the bar and
then drove to the jail parking lot using public streets.[18]  There was no indication of any alcohol in the
car, and Axt admitted to the officers on the scene that he had just come from a
bar down the street.  Thus, the ALJ did
not err in holding that the officers had probable cause to believe that Axt had
been driving in a public place while intoxicated.[19]  I would, therefore, sustain the Department=s second
issue.[20]








Accordingly,
I would reverse the trial court=s
judgment and render judgment reinstating the ALJ=s order
authorizing the Department to suspend Axt=s driver=s
license.

 

 

JOHN CAYCE

CHIEF JUSTICE

 

DELIVERED:  June 25, 2009











[1]Contrary to the dissent=s assertion, we expressly
do not hold that the Department is required to prove every element of an
offense to justify an investigative stop. 
Dissenting op. at 5.  Instead, we
hold that, applying the substantial evidence standard, the trial court
correctly found that the ALJ=s reasonable suspicion determination was not
supported by substantial evidence.  See
Tex. Gov=t Code Ann. ' 2001.174(2); Mireles,
9 S.W.3d at 131; Vasquez, 225 S.W.3d at 52.





[2]Specifically, the
following exchange took place between Officer Balson and Axt=s defense attorney at the
administrative hearing:

 

Q      Okay.  All right. 
That entry normally has controlled access, doesn=t it?

 

A      Yes, sir.

 

Q      It
has gates for the entry laneCor a gate for the entry lane and a gate for the
exit lane.  Is that correct?

 

A      Yes, sir.

 

Q      The
gate being a yellow arm that lowers to block entry or exit.  Is that correct?

A      Yes, sir.

 

Q      At that particular time
both gates were up and not restricting entry or exit.  Is that correct?

 

A      That=s correct.

 

Q      And you even put in your
report that theCboth gates were up
allowing public access to the parking lot. 
Is that correct?

                                                    

A      I don=t believe I said
that.  I think Officer DeWall did.

 

.
. . .

 

Q      Okay.  Your narrative
starts here.  Is that correct?

 

A      Yes, sir.

 

Q      Okay.  Then as it continues on the next page, [A]Both gates were up
allowing public access to the parking lot.[A]  Is that
correct?

 

A      Okay. 
Sure.

 

Q      Okay. 
That=s what you put in your
report.  Right?

 

A      Yes. 
I just didn=t see it.

 

The
Department=s attorney did not ask
Officer Balson any questions at the administrative hearing.  Thus, the record establishes that any notice
provided by the restricted access sign was negated by the open gates and by the
fact that it was 2:00 a.m., not normal business hours, when Axt entered the
lot.  That is, Officer Balson=s testimony and report
establish that access to the lot was not restricted on the night in
question.  Consequently, reasonable
suspicion cannot exist that Axt was committing criminal trespass.





[1]Tex. Gov=t Code Ann. ' 2001.174(2) (Vernon
2008); Mireles v. Tex. Dep=t of Pub. Safety, 9 S.W.3d 128, 131 (Tex.
1999).





[2]Mireles, 9 S.W.3d at 131; Tex. Dep=t of Pub. Safety v.
Vasquez,
225 S.W.3d 47, 52 (Tex. App.CEl Paso 2005, no pet.).





[3]Mireles, 9 S.W.3d at 131; Sw. Pub. Serv. Co. v. Pub. Util. Comm=n of Tex., 962 S.W.2d 207, 215
(Tex. App.CAustin 1998, pet.
denied).





[4]Tex. Dep=t of Pub. Safety v. Stacy, 954 S.W.2d 80, 83 (Tex.
App.CSan Antonio 1997, no
writ).





[5]Tex. Dep=t of Pub. Safety v.
Pruitt,
75 S.W.3d 634, 639 (Tex. App.CSan Antonio 2002, no pet.).





[6]Tex. Dep=t of Pub. Safety v. Pucek, 22 S.W.3d 63, 67 (Tex.
App.CCorpus Christi 2000, no
pet.).





[7]Tex. Transp. Code Ann. ' 724.042 (Vernon Supp. 2008).





[8]A person commits criminal trespass if he enters or remains on property
or in a building of another without effective consent and he had notice that
the entry was forbidden or he received notice to depart but failed to do so.
Tex. Penal Code Ann. ' 30.05 (Vernon Supp.
2008).





[9]Tex. Dep=t of Pub. Safety v.
Fisher,
56 S.W.3d 159, 163 (Tex. App.CDallas 2001, no pet.); Martinez v. State,
29 S.W.3d 609, 611B12 (Tex. App.CHouston [1st Dist.] 2000,
pet. ref=d).





[10]Davis v. State, 829 S.W.2d 218, 219 (Tex. Crim. App. 1992) (op. on reh=g).





[11]Gurrola v. State, 877 S.W.2d 300, 302 (Tex. Crim. App. 1994).





[12]Reyes v. State, 899 S.W.2d 319, 324 (Tex. App.CHouston [14th Dist.] 1995, pet. ref=d) (citing Crockett v.
State, 803 S.W.2d 308, 311 (Tex. Crim. App. 1991)).





[13]See Rue v. State, 958 S.W.2d 915, 917B18 (Tex. App.CHouston [14th Dist.] 1997, no pet.).





[14]Tex. Transp. Code Ann. ' 724.042(2)(A).





[15]See id.





[16]Guzman v. State, 955 S.W.2d 85, 87 (Tex. Crim. App. 1997).





[17]Id.





[18]See Dep=t of Pub. Safety v.
Hirschman,
169 S.W.3d 331, 340 (Tex. App.CWaco 2005, pet. denied); Stagg v. Tex. Dep=t of Pub. Safety, 81 S.W.3d 441, 444
(Tex. App.CAustin 2002, no pet.).





[19]See Muniz v. State, 851 S.W.2d 238, 251 (Tex. Crim. App.), cert. denied, 510 U.S.
837 (1993) (AIn determining whether probable
cause existed for the arrest, we examine the cumulative information known to
all the officers who cooperated in the arrest.@) (citing Woodward v.
State, 668 S.W.2d 337, 344 (Tex. Crim. App. 1982), cert. denied, 469
U.S. 1181 (1985)).





[20]Because of my disposition of the Department=s first two issues, I
would not need to reach its third issue. 
See Tex. R. App. P. 47.1.