

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| TEXAS DEPARTMENT OF PUBLIC SAFETY, | § | No. 08-11-00178-CV |
| | § | |
| Appellant, | | Appeal from the |
| | § | |
| v. | | County Court at Law Number Five |
| | § | |
| RAUL RENE CASTRO, | | of El Paso County, Texas |
| | § | |
| Appellee. | | (TC# 2010-C00119) |
| | § | |

**O P I N I O N**

Appellant, Texas Department of Public Safety (the Department), suspended the driver's license of Appellee, Raul Castro. After an administrative law judge (ALJ) sustained suspension of Appellee's driver's license, Appellee challenged the ALJ's ruling by filing an appeal in the County Court at Law. Finding no reasonable basis in the record for the agency's action and no substantial evidence to support the ALJ's order, the County Court at Law reversed the ALJ's order sustaining the Department's suspension of Castro's license. The Department appeals the reversal of the ALJ's order and argues that the County Court at Law improperly reweighed the evidence. We sustain the issue and reverse the order of the County Court at Law.

**BACKGROUND**

At the administrative hearing, Officer John Van Valen of the El Paso Police Department

testified that at approximately 2 a.m., he observed a black-over-chrome Harley Davidson motorcycle change lane three times without signaling intent to change lanes. Officer Van Valen followed the motorcycle because he believed that the driver may be intoxicated.

While following the motorcycle, Officer Van Valen checked the motorcycle license plate for outstanding registration and other possible infractions. He observed the motorcycle make a U-turn, turn into the parking lot of an apartment complex and fall on its side, and then saw the driver and passenger stand up in the parking lot. The female passenger, later identified as Brenda Solis, left the area between the vehicles in the parking lot and disappeared from Officer Van Valen's line of sight. Officer Van Valen testified that he recognized Appellant and Solis as the same driver and passenger on the motorcycle that committed the traffic violations because he did not lose sight of them for more than, at most, seven seconds as a car passed and he was making the U-turn before turning into the apartment complex parking lot. At that time, Officer Van Valen turned away briefly to check oncoming traffic.

Officer Van Valen observed that Appellant had straddled the motorcycle and began to rev the throttle. Officer Van Valen asked Appellant to turn off the motorcycle and step away to speak with him. He asked Appellant if he was injured and asked the whereabouts of the female passenger. Appellant refused aid, denied that he had a female passenger, and stated that he was only parking the motorcycle and had not been driving it. Officer Van Valen testified that he observed a strong odor of an unknown alcoholic beverage emanating from Appellant's breath, that Appellant was swaying while standing, and had slurred speech. Officer Van Valen repeatedly instructed Appellant to ask the passenger to appear, and screamed several times, "I know that there's a second passenger, a female passenger on this vehicle. Where has she gone?" Brenda

2

Solis, then came to the area where Officer Van Valen was speaking with Appellant. Ms. Solis was offered but refused emergency medical care.

As he prepared to conduct a DWI investigation, Officer Van Valen observed several chains hanging from Appellant's leather jacket and that the clip or carrying handle of a lock-blade pocket knife was visible from the outside of a jacket pocket. Appellant was initially non-compliant when Officer Van Valen directed him to remove the knife but eventually placed the knife on the ground. When Officer Van Valen instructed Appellant to back away from the knife, Appellant stated that he was not required to do so. Ms. Solis repeatedly interceded in Appellant's behalf, stating that Officer Van Valen was not going to do anything to Appellant or take him away. Fearing for his safety, Officer Van Valen requested police assistance.

After another officer arrived and a safe environment was established, Officer Van Valen requested Appellant to put his hands on the patrol car so that he could conduct a pat-down for his safety. Appellant again informed Officer Van Valen that he was not required to do so and stated, "You're not going to make me." Because Officer Van Valen observed Appellant move his left leg in front of this right and flex his fist, signs he knew as a result of his training and experience that indicate a subject is preparing to fight or flee, he concluded that he could not proceed safely with his investigation so he retrieved and armed his taser. Appellant was taken to the vehicle, where he was handcuffed for security purposes.

Officer Van Valen informed Appellant that he was going to conduct a DWI investigation because he had seen him commit traffic violations, had observed the fall of the motorcycle which had ejected Appellant and Ms. Solis, and had observed Appellant to have the odor of alcohol on his breath, slurred speech, and difficulty maintaining his balance. Appellant declined to perform the

3

tests. Based on the foregoing, and because of his training and experience in watching traffic violations and subsequent one-vehicle accidents, Officer Van Valen opined that Appellant had been driving while intoxicated and arrested him for that offense. After receiving his statutory warnings, Appellant refused to provide a breath specimen for testing. Officer Van Valen made an in-court identification of Appellant as the individual he encountered that morning.

On cross-examination, defense counsel asserted that Officer Van Valen's descriptions of the direction of travel were contrary to his report. Appellant testified that after he saw a police vehicle pass by, he decided not to move the motorcycle and instead backed it up five feet. He contended that Officer Van Valen "took about four minutes to make that U-turn" before arriving. Appellant testified that Officer Van Valen opened the door of his police vehicle, instructed Appellant to step away from the motorcycle, approached Appellant while yelling, "Where's the girl that was with you?," and asked if Appellant had any weapons. Appellant testified that he informed Officer Van Valen that there was no girl with him, that he did have a knife, and that Officer Van Valen grabbed the knife from his hand. When asked, Appellant said he informed Officer Van Valen that he had been drinking, denied that he had been driving the motorcycle, and asserted that he was moving the motorcycle but had not turned it on.

Appellant offered conflicting accounts about the timing of Solis' arrival on the scene. Appellant first testified that Ms. Solis had been inside an apartment and had come out to see what Appellant was doing and whether he had moved the motorcycle, and stated that Solis was standing next to him as he "pulled up" the motorcycle. Appellant also testified that Solis came out of the apartment two minutes after Officer Van Valen arrived because she saw the flashing lights of the patrol car and wanted to know what was happening. According to Appellant, after Solis arrived at

4

the scene of the encounter, Officer Van Valen stated, "That's the one I'm talking about."

Appellant testified that when asked to perform the field sobriety tests, he informed Officer Van Valen that he had not been driving and was not going to perform the tests. Appellant maintained that he asked Officer Van Valen to touch the motorcycle because it was not hot, and asserted that Officer Van Valen thereafter told him to shut up and step back. Appellant contended that he was never on the street and that Officer Van Valen had lied "all about that." Appellant also claimed that he put his hands on the police vehicle "right away" because Officer Van Valen "started blowing up" and had taken his taser out, but Appellant denied that he had ever refused any of Officer Van Valen's directives.

Solis testified that she and Appellant had been drinking from about 8 p.m. and that Appellant went to move his motorcycle between 1 a.m. and 1:30 a.m. Solis stated that they had not been riding the motorcycle nor had fallen from the motorcycle. Although Officer Van Valen had described Solis as wearing a white jacket that evening, Solis denied that she owned a white jacket. Solis' seventeen-year-old daughter testified that Appellant and Solis began drinking at approximately 8 p.m. and watched movies, and at 1 a.m. Appellant stated he was going to move his motorcycle.

The ALJ issued an administrative decision containing findings of fact, which included a finding that Officer Van Valen was a credible witness whose testimony was "consistent." The ALJ also concluded that Officer Van Valen developed probable cause to believe Appellant was driving the motorcycle after observing the vehicle and identifying it while traveling. Consequently, the ALJ determined that Appellant's assertion that he was simply moving the motorcycle was not credible. The ALJ also concluded that the denial that there was a passenger

5

and her subsequent appearance after being called by Officer Van Valen affected Appellant's version of events and the weight to be given to it. The ALJ determined that Officer Van Valen's observation of the commission of traffic offenses, along with his very-specifically articulated description of the events as they developed, supported a finding of the officer's reasonable suspicion to detain Appellant for investigative purposes. The ALJ found the Department had met its burden and was authorized to suspend Appellant's driving privileges for 180 days.

Appellant appealed the suspension to the County Court at Law and alleged that the ALJ had made "an illegal affirmative finding that the defendant had refused to submit to an Intoxilyzer test at the request of a law enforcement officer . . . ." Appellant also complained that the Department had failed to comply with Texas Transportation Code "Section 724," that "the agency's findings, inferences, and decisions are not reasonably supported by substantial evidence considering the evidence in the record as a whole," and that the Department should not be allowed to disqualify or suspend any of his driving privileges.

At the County Court at Law hearing, Appellant argued that the ALJ's decision was not supported by substantial evidence and was arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. Appellant noted that Officer Van Valen's testimony that Solis was wearing a white jacket was countered by Solis' evidence that she does not own a white jacket, alleged that the officer's testimony regarding directions of travel was inconsistent, alleged that his testimony that he only lost sight of the motorcycle for seven seconds was long enough for him to lose sight of that vehicle and that he had failed to touch the motorcycle as requested, and argued that Officer Van Valen had admitted that Appellant had cleaned up his appearance between the encounter and the administrative hearing. Appellant also argued that the

6

testimony of the defensive witnesses had been unchallenged and that the Department failed to prove Appellant had a commercial driver's license.

The Department argued that, under the substantial evidence rule, the reviewing court was restricted to reviewing the certified ALJ record for the purpose of determining whether the record contained more than a scintilla of evidence to support the ALJ's decision and, if it did, the reviewing court was barred from substituting its own judgment for that of the ALJ. The Department reminded the County Court at Law that the ALJ was the sole judge of the credibility of the witnesses in the administrative hearing, was free to accept the testimony of any witness or even accept part of a witness's testimony while disregarding the remainder, and had found Officer Van Valen's testimony to be not only credible but consistent. Noting that Officer Van Valen checked the motorcycle's license plate before conducting the stop and observing the motorcycle in the parking lot, the Department asserted that the record contained more than enough evidence to support the ALJ's determinations. The Department also countered that it was under no duty to prove that Appellant had a commercial driver's license, and explained that cases are processed based upon the driver's license number presented at the time of arrest.

The County Court at Law thereafter reversed the ALJ's administrative decision based on a lack of substantial evidence.

## DISCUSSION

Because it contends there is substantial evidence to support the ALJ's determination, the Department argues that the County Court at Law erred. We agree.

### *Standard of Review*

In an administrative hearing, the ALJ is the finder of fact and determines the weight to be

7

given the evidence. *See Tex. Dep't of Pub. Safety v. Rolfe*, 986 S.W.2d 823, 827 (Tex.App. – Austin 1999, no pet.); *see also Tex. Dep't of Pub. Safety v. Chang*, 994 S.W.2d 875, 877 (Tex.App. – Austin 1999, no pet.) (citing *Tex. Health Facilities Comm'n v. Charter Med.-Dallas, Inc.*, 665 S.W.2d 446, 453 (Tex. 1984)) (an administrative decision must be upheld if either an affirmative or negative finding could be supported by the evidence). When reviewing administrative decisions regarding the suspension of driving privileges, a court is to utilize the substantial evidence standard of review. TEX. TRANSP. CODE. ANN. § 524.041 (West 2013); TEX. TRANSP. CODE ANN. § 724.047 (West 2011) (Chapter 524 governs an appeal from an action of the department following an administrative hearing under Chapter 724 in suspending or denying the issuance of a license); TEX. GOV'T CODE ANN. § 2001.174 (West 2008); *Tex. Dep't of Pub. Safety v. Alford*, 209 S.W.3d 101, 103 (Tex. 2006); *Tex. Dep't of Pub. Safety v. Williams*, 303 S.W.3d 356, 358 (Tex.App. – El Paso 2009, no pet.). Under this standard of review for administrative decisions in contested cases, the reviewing court shall reverse or remand the case for further proceedings if the appellant's substantial rights have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (A) in violation of a constitutional or statutory provision; (B) in excess of the agency's statutory authority; (C) made through unlawful procedure; (D) affected by other error of law; (E) not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or (F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. TEX. GOV'T CODE ANN. § 2001.174(2).

The reviewing court is required to review the record of the ALJ's hearing. TEX. TRANSP. CODE ANN. § 524.043 (West 2013). Because the ALJ is the fact finder, a reviewing court which

applies the substantial evidence standard is barred from substituting its judgment for the judgment of the ALJ on the weight of the evidence. TEX. GOV'T CODE ANN. § 2001.174; *Mireles v. Tex. Dep't of Pub. Safety*, 9 S.W.3d 128, 131 (Tex. 1999); *Tex. Dep't of Pub. Safety v. Vasquez*, 225 S.W.3d 47, 52 (Tex.App. – El Paso 2005, no pet.).

A reviewing court is only to determine whether the record demonstrates some reasonable basis for the agency's action and is not to determine whether the agency's decision was correct. *Mireles*, 9 S.W.3d at 131; *see City of El Paso v. Pub. Util. Comm'n*, 883 S.W.2d 179, 185 (Tex. 1994); *Williams*, 303 S.W.3d at 358. A reviewing court is required to affirm the administrative findings in contested cases if there is more than a scintilla of evidence to support them, and may sustain an administrative decision "even if the evidence preponderates against it." *Mireles*, 9 S.W.3d at 131; *Railroad Comm'n of Tex. v. Torch Operating Co.*, 912 S.W.2d 790, 792-93 (Tex. 1995). The administrative decision is presumed to be supported by substantial evidence, and the burden of proving that the administrative decision should be reversed is to be borne by the contestant. *City of El Paso*, 883 S.W.2d at 185.

*Analysis*

The Department contends that the County Court at Law erred below because substantial evidence supported the ALJ's administrative findings and decision to sustain the suspension of Appellant's driving privileges. The issues at the hearing were whether:

(1) reasonable suspicion or probable cause existed to stop or arrest the person;

(2) probable cause existed to believe that the person was:

    (A) operating a motor vehicle in a public place while intoxicated; or

    (B) operating a watercraft powered with an engine having a manufacturer's rating of 50 horsepower or above while intoxicated;

9

(3) the person was placed under arrest by the officer and was requested to submit to the taking of a specimen; and

(4) the person refused to submit to the taking of a specimen on request of the officer.

TEX. TRANSP. CODE ANN. § 724.042 (West 2011).

A law enforcement officer may lawfully stop a motorist who commits a traffic violation in the officer's presence. TEX. CODE CRIM. PROC. ANN. art. 14.01(b) (West 2005) ("A peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view."); TEX. TRANSP. CODE ANN. § 543.001 (West 2011) ("Any peace officer may arrest without warrant a person found committing a violation of this subtitle."); *see Garcia v. State*, 827 S.W.2d 937, 944 (Tex.Crim.App. 1992). In order to lawfully detain a suspected violator, a peace officer only needs reasonable suspicion that a traffic law has been violated. *Hesskew v. Tex. Dep't of Pub. Safety*, 144 S.W.3d 189, 191 (Tex.App. – Tyler 2004, no pet.). "Reasonable suspicion exists if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person actually is, has been, or soon will be engaged in criminal activity." *Ford v. State*, 158 S.W.3d 488, 492-93 (Tex.Crim.App. 2005). In determining whether reasonable suspicion existed for a stop, a court must look to the totality of the circumstances. *Id.*

Officer Van Valen thrice observed Appellant fail to signal intent to change lanes. He continued to follow Appellant because he believed Appellant was possibly intoxicated while operating the motorcycle and then observed Appellant and Solis fall with the motorcycle. Officer Van Valen observed Appellant had red, bloodshot eyes, a strong odor of alcohol on his breath, slurred speech, and an unsteady balance. This evidence supports a finding that Officer Van Valen

10

had reasonable suspicion to lawfully detain Appellant. TEX. TRANSP. CODE ANN. § 724.042(1); *see Hargrove v. State*, 40 S.W.3d 556, 557 (Tex.App. – Houston [14th Dist.] 2001, pet. ref'd) (officer who personally observed driver change lanes without signaling had reasonable suspicion to detain driver).

Appellant refused to perform the field sobriety tests as requested by Officer Van Valen, and after being informed of his statutory warnings, refused to provide a breath sample for testing. A person's refusal to participate in field sobriety testing is a factor that may be considered in the totality of the circumstances when determining whether probable cause exists. *Maxwell v. State*, 253 S.W.3d 309, 314 (Tex.App. – Fort Worth 2008, pet. ref'd).

Although there is conflicting evidence regarding whether Appellant was operating the motorcycle, the ALJ was free to determine the credibility of the witnesses and assign the weight to be given the evidence. *Tex. Dep't of Pub. Safety v. Sanchez*, 82 S.W.3d 506, 511 (Tex.App. – San Antonio 2002, no pet.). The record contains evidence in support of a finding that Officer Van Valen had probable cause to believe Appellant was driving while intoxicated. TEX. TRANSP. CODE ANN. § 724.042(2)(A). Moreover, the evidence is undisputed that Appellant was arrested for driving while intoxicated, was provided statutory warnings, was asked to provide a breath specimen for testing, and refused to provide a specimen. TEX. TRANSP. CODE ANN. § 724.042(2)(3)(4).

The ALJ's administrative decision, including its findings of fact, conclusions of law, and order therein, is supported by substantial evidence and the record demonstrates some reasonable basis for the ALJ's action. TEX. GOV'T CODE ANN. § 2001.174(2); *Mireles*, 9 S.W.3d at 131; *see City of El Paso*, 883 S.W.2d at 185; *Williams*, 303 S.W.3d at 358. We conclude the County Court

11

at Law improperly re-weighed the evidence and substituted its judgment for that of the ALJ when Appellant appealed from the ALJ's administrative determination. TEX. GOV'T CODE ANN. § 2001.174; *Mireles*, 9 S.W.3d at 131; *Vasquez*, 225 S.W.3d at 52. Issue One is sustained.

## CONCLUSION

We reverse the County Court at Law's order and render judgment reinstating the administrative law judge's order authorizing the suspension of Appellant's driving privileges.

GUADALUPE RIVERA, Justice

July 24, 2013

Before McClure, C.J., Rivera, and Antcliff, JJ.
Antcliff, J., not participating

12